IN THE MATTER OF MACLUB OF AMERICA, INC.

Suffolk.   February 5, 1936. — July 1, 1936.

Present: RUGG, C.J., PIERCE, FIELD, & QUA, JJ.

*Attorney at Law.   Corporation,* Practice of law.

A corporation, which by force of its contracts with a large number of "members" furnished to them at its expense "service" described in its advertising as "legal defence," consisting of "consultations and advice in any case pertaining to the use of" their automobiles and defence of civil and criminal proceedings arising out of such use, and also published in a magazine sent to members a list of recommended attorneys, as a matter of law was practising law in violation of G. L. (Ter. Ed.) c. 221, § 46, as amended by St. 1935, c. 346, § 1, although under the contracts the members, while urged to employ attorneys on the recommended list, were at liberty to employ others, and although, when an attorney was retained by a member, the corporation took no part in the management of the matter for which his services were engaged and knew nothing of it until the bill for his services was presented to it.

PETITION, filed by the Attorney General in the Supreme Judicial Court for the county of Suffolk on September 27, 1935, under § 46B, added to G. L. (Ter. Ed.) c. 221 by § 2 of St. 1935, c. 346, averring that the respondent was a corporation practicing law; and praying that an inquiry be ordered, that the respondent be ordered to show cause why it should not be adjudged in contempt of court, and that it be restrained, *pendente lite,* from continuing conduct set forth in the information.

There was a hearing by *Lummus,* J., who found the facts and reported the proceeding to the full court for determination.

*P. A. Dever,* Attorney General, & *J. J. Ronan,* Assistant Attorney General, for the Attorney General.

*H. W. Hardy,* for the respondent.

*S. Bell & D. F. Carpenter,* by leave of court filed a brief as *amici curiæ.*

RUGG, C.J.   This is a petition by the Attorney General alleging that the respondent is engaged illegally in the

practice of law. The case was heard by a single justice, who found the material facts in substance to be these: The respondent is a corporation organized under the laws of this Commonwealth with a capital of $25,000. It sells "memberships," in reality contracts, for a consideration of $12 for the first year and $10 for each year renewed thereafter, to persons belonging to the Masonic fraternity. These contracts give to the members various benefits connected with the operation of automobiles in this and other States. Each member receives a "first aid kit" for use by a person injured by accident, an automobile map, and a folder giving information helpful in travelling. Each member also receives, nine times a year, a magazine entitled "Maclub Friends Along The Road Magazine," containing lists of approved hotels and restaurants and of "official service stations and dealers" with a star opposite the names of those service stations which may be called upon to render roadside service in case an automobile is disabled. To a limited extent the respondent assumes the service charges.

One benefit to members, described by the respondent in its printed matter as "one vitally important phase of Maclub service," is the "Maclub legal defence." The respondent agrees to furnish at its expense "consultations and advice in any case pertaining to the use of the automobile, legal defence of members in any civil suit arising from the use of a member's automobile that may involve property damage, legal defence of claims for personal injuries where members are not insured," and "legal defence in the courts of members charged with violating any automobile law, any city ordinance or any police regulation, including alleged manslaughter." A list of recommended attorneys (who pay nothing for the listing) is published in the magazine at intervals. This list of names of recommended attorneys was secured by the legal department of the respondent corporation. Some at least of the recommended attorneys consented to being on the list. The list contains the names of attorneys in almost every important city and town in the New England States. Members are at liberty to employ other attorneys, but are urged to employ those on the list. The respondent

has lived up to its contracts with respect to "Maclub legal defence."

The amount paid for services of attorneys was about $500 in 1933 and less than $40 in each of the two following years. There are about nine hundred members of the respondent, of whom about four hundred live in this Commonwealth. When an attorney is retained by a member, the respondent knows nothing of it until the bill for services is presented. It takes no part in the management of the case and it has no salaried attorney. The final statement of the single justice is that, unless these facts "require the conclusion as matter of law that the method of doing business adopted by the respondent amounts to the illegal practice of law, I do not draw from them such conclusion as matter of fact. I report the case for the determination by the full court, without further decision."

The respondent does not contend that it can legally practise law. *Opinion of the Justices*, 289 Mass. 607, 612–614. It does not challenge the jurisdiction of the court. It was enacted by St. 1935, c. 346, § 1, amending G. L. (Ter. Ed.) c. 221, § 46, that "No corporation . . . shall practice or appear as an attorney for any person other than itself in any court in the commonwealth or before any judicial body or hold itself out to the public or advertise as being entitled to practice law . . . or give legal advice in matters not relating to its lawful business, or practice law, or hold itself out in any manner as being entitled to do any of the foregoing acts, by or through any person orally or by advertisement, letter or circular . . . ." Penalties are established for violation of this section. By § 2 of said c. 346 there were added to said c. 221, §§ 46A and 46B. It was provided by said § 46A (with exceptions not here material) that no individual other than a member of the bar "shall practice law, or, by word, sign, letter, advertisement or otherwise, hold himself out as authorized, entitled, competent, qualified or able to practice law." By said § 46B jurisdiction was conferred in equity upon petition of the Attorney General among others to restrain violations of said §§ 46 and 46A.

The present proceeding was instituted subsequently to

the operative date of said c. 346. The provisions of its first section, so far as concerns the facts shown on this record, do not enlarge the provisions of the common law touching the practice of law. *Opinion of the Justices*, 279 Mass. 607. *Matter of Cohen*, 261 Mass. 484. *Opinion of the Justices*, 289 Mass. 607. In view of said c. 346, § 2, it is not necessary to determine what remedies might be open to the petitioner apart from this statute.

The terms of the contract between the respondent and its members bound the respondent in plain terms, for the consideration paid it, to furnish them services which can be rendered by members of the bar alone and which require the practice of law. Comprised within the sweep of its obligations touching liabilities arising from the use of an automobile were consultations and advice, legal defence of members in actions involving property damage, legal defence of claims for personal injuries against which members were not insured and legal defence in the courts of members charged with violation of any automobile law including manslaughter. This contractual obligation embraced every variety of litigation, whether civil or criminal, arising from ownership and operation of an automobile. To provide legal defence of this character naturally demands investigation of relevant facts, ascertainment of available evidence, and determination of method of trial. There is no ambiguity about the nature and identity of the agreement made and the responsibilities assumed by the respondent. Its contractual duty could be met only by members of the bar in the practice of their profession. This feature of the agreement made by the respondent is stressed in its advertisements. The use of commercial methods of advertising for attracting those who may require the services of members of the bar for the protection of their rights is contrary to the standards required of members of the bar and incompatible with their duty to the court. *Matter of Cohen*, 261 Mass. 484. The respondent plainly violated this fundamental conception as to the practice of law. It is inherent in the nature of an obligation like that assumed by the respondent that the functions

of courts are involved and that the services of members of the bar of adequate learning and skill must be provided. The publication of the list of recommended attorneys in conjunction with the other advertising of the respondent, and its plan of doing business, are in substance and effect representations that it deals at wholesale in the kind of legal services which it has contracted to provide to its individual members. This list of recommended attorneys was prepared by the legal department of the respondent. The establishment of such a department in order to facilitate providing legal services of the nature here described, free of expense to its members by virtue of its contract, is not within the legitimate sphere of corporate activity.

. The respondent has performed its contracts with respect to the "Maclub legal defence" according to the findings of the single justice. That finding means that the respondent has provided at its own expense services of members of the bar required in conducting the variety of litigation already described. The contract of the respondent is to furnish its members "legal defence" in the classes of cases specified, not to pay for "legal defence" undertaken by the member.

The relation of attorney and client does not exist between those who hold membership in the respondent and the members of the bar who conduct their legal defence. The relation is between the respondent and the attorney. The holders of membership in the respondent do not in truth and fact act for themselves but for the respondent in selecting and consulting attorneys. Those who perform the contractual obligations of the respondent are its attorneys. From it they receive their compensation. To its instructions they are subject. The respondent is the principal throughout the transaction with the attorneys. It can discharge or change them at will. Commonly an attorney and client alone are the parties interested in the relationship. The intervention of the respondent, who employs the attorney, gives a different character to the relationship. It ceases to be highly confidential and fiduciary. The fact that the member of the respondent may secure the services of an attorney whose name is not on the list of recom-

mended attorneys is not of consequence. Clearly, whether upon the list of attorneys or not, the attorney accepts the service upon the credit of the respondent. It may refuse to deal with him. It may fix the compensation. Unless the arrangement is satisfactory, the attorney will be unable to take the case. The payment by the member to the respondent for the contract for a legal defence in the class of cases described is a nominal sum. In some, if not in many instances, it must be much less than the fee ordinarily due for services in any contested case. The member does not buy legal services of the attorney. The respondent buys and pays for legal services in behalf of all its members. It could not furnish those services in conformity to its contracts with its members unless it was dealing in the purchase and sale of legal services to be rendered by lawyers in its behalf and upon its credit. This method of conducting its business conclusively stamps the activities of the respondent as the unauthorized practice of the law. It buys and sells practice of the law on a commercial basis as essentially as a merchant buys and sells his wares. The member of the respondent purchases in advance for the period of one year all legal services which he may need for a nominal sum of $12 or $10. This is utterly at variance with the standards of the legal profession, where the fee of the individual lawyer is fixed by the nature of the work performed, the skill required and the benefit accruing to the client. The respondent has secured a combination of nine hundred members, whose legal needs of a specified class it has agreed to furnish without further expense to any member. The success of the business adventure of the respondent depends upon its volume. It must be advertised in order to procure members. The methods of business of the respondent are in violation of the general rules for the practice of the law which have been recognized for the protection of the courts and the public in order to maintain unimpaired the independence, integrity and ethical standards of the bar and the highly fiduciary relations between the attorney and client.

The conclusion that the respondent was practising law

and violating principles essential to the protection of the public and the courts is supported by a considerable body of authority. *People* v. *Motorists Association of Illinois,* 354 Ill. 595. *People* v. *Chicago Motor Club,* 362 Ill. 50. *Rhode Island Bar Association* v. *Automobile Service Association,* 55 R. I. 122. *People* v. *Merchants Protective Corp.* 189 Cal. 531. *Depew* v. *Wichita Association of Credit Men,* 142 Kans. 403. *United States Title Guaranty Co.* v. *Brown,* 217 N. Y. 628. *State* v. *Merchants Protective Corp.* 105 Wash. 12. *People* v. *Association of Real Estate Tax-payers of Illinois,* 354 Ill. 102.

The result is that on the facts found the petitioner is entitled to a decree in his favor. Its details may be determined by a single justice.

*Ordered accordingly.*