IN THE MATTER OF WILLIAM A. THIBODEAU.

Suffolk.   May 20, 1936. — September 9, 1936.

Present: CROSBY, PIERCE, LUMMUS, & QUA, JJ.

*Attorney at Law.*

An attorney at law was not liable to discipline because he advertised and employed a sales manager and salesmen to solicit in several States subscribers at an annual fee to a service, furnished by him to owners of automobiles apart from his law practice, whereby he gave them road, garage and medical service, maps and touring information, accident insurance, and aid in getting bail, paid wholly or in part for services of attorneys chosen by the subscribers to defend them in certain types of automobile cases, and furnished them a list of competent attorneys from which they might, but were not required, to make their selection, but did not himself serve as such an attorney nor employ the attorneys nor direct or control or share fees with them nor interfere with the confidential relation between them and the subscriber-clients nor derive any direct advantage in his law practice from such business conducted by him.

PETITION by the Attorney General, filed in the Supreme Judicial Court for the county of Suffolk on September 27, 1935.

The case was heard by *Donahue*, J., who reported it for determination by the full court.

*M. M. Goldman*, Assistant Attorney General, for the Attorney General.

*L. Withington*, (*E. O. Proctor* with him,) for the respondent.

. QUA, J.   This is a, petition by the Attorney General informing the court as to certain alleged improper practices of the respondent, who is a duly enrolled attorney at law, and praying for an inquiry with respect thereto and for such orders of discipline and restraint as the court shall deem proper.   Disbarment is not sought.

The case was tried before a single justice of this court, who found all the material facts and reported the case with the statement that unless the facts found required the con-

clusion as matter of law that the respondent was practising law improperly, he did not draw from them such conclusion as matter of fact. The report also states that it was not contended that the proceeding was brought under St. 1935, c. 346, and that "The case was tried on the theory that it was a proceeding at common law based upon the inherent power of the court to deal with the conduct of members of the bar in their practice of law." *Randall, petitioner,* 11 Allen, 473, 479. *Boston Bar Association* v. *Casey,* 211 Mass. 187, 193. *Matter of Keenan,* 287 Mass. 577, 582. *Matter of Mayberry, ante,* 155. As the case is presented, therefore, the question for us to determine is whether the facts found constitute improper conduct as matter of law. *Matter of Sleeper,* 251 Mass. 6, 12. *Jones* v. *Clark,* 272 Mass. 146, 149. *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 384.

The respondent is a member of a law firm practising in Boston. He also owns, controls and conducts a business under the name of the Automobile Legal Association, commonly known as the "A. L. A.," in connection with which he engages to render certain services to subscribers in return for annual fees of $12 for the first year and $10 thereafter. There is in truth no real association. The subscribers or "members" hold no meetings, have no organization, have no voice by vote or otherwise in the conduct of the business and do not share in the profits. The Automobile Legal Association is simply a name under which the respondent renders services to so called "members" who have subscribed for the service. In selling his service and in procuring "members" the respondent uses commercial methods. He employs a "sales manager" and at times from twenty to twenty-five "salesmen" who solicit subscriptions. He advertises for "salesmen." He supplies them with printed and typewritten material in the nature of advertising matter to aid them in getting subscriptions.

It is the contention of the petitioner that the respondent is practising law in the name of the "association" and that he is using the "association" as a mere cloak or cover for the use of improper and unprofessional methods of solici-

tation of legal business for himself and his law firm. It is the contention of the respondent that the "association" carries on a legitimate lay business, no part of which constitutes the practice of law; that it is entirely separated from his law practice; that his solicitation and advertising are solely in behalf of the association's business; and that neither he nor his law firm profits therefrom in their professional practice.

It cannot be doubted that the solicitation by a lawyer of employment in legal matters by means of "salesmen" and advertising as here disclosed would be a gross impropriety which would at once subject him to discipline. *Matter of Cohen*, 261 Mass. 484. *Matter of Maclub of America, Inc.*, *ante*, 45, 48. On the other hand commonly a member of the bar is free to engage in commercial pursuits of an honorable character and to advertise and to extend his purely mercantile business honestly and fairly by ordinary commercial methods. With these principles in mind we turn to the specific findings of the single justice.

The respondent has made some recent changes in the methods of conducting the "association" business. These changes were made voluntarily before the petition was filed and apparently in good faith for the purpose of avoiding reasonable cause for criticism. The case involves only questions of professional propriety. There is no suggestion of fraud or dishonesty on the part of the respondent at any time. Under these circumstances we do not feel called upon to pass upon practices or methods which have been abandoned. We shall consider the case upon the findings as to the nature of the business as conducted at the time of the trial. Presumably this continues unaltered.

The "association" has grown to large proportions. It employs fifty to sixty persons on salary in addition to the salesmen. It has about thirty-five thousand subscribers, principally in New England, New York and New Jersey. Its chief office is at Boston, but it has other offices at important cities. In addition to what for convenience may be called its legal service, it supplies to subscribers at its expense an emergency road, garage and medical service,

provides maps and touring information and in States where it has an office, except in New Hampshire, it furnishes accident insurance. That these services are substantial and not merely colorable is shown by the facts that in one year the "association" paid for road and garage service in about forty-seven thousand instances, for emergency medical service in fifty-one instances, furnished to subscribers nearly forty-nine thousand interstate and city traffic maps and road maps and supplied touring information by letter or telephone on sixteen thousand seven hundred eighty-nine occasions. The "association" assists "members" to secure bail in connection with automobile offences. The "legal" service consists in paying for legal advice and for defending members and their drivers when charged with violation of automobile laws and regulations, including reckless driving and manslaughter, and for defending suits for property damage. The "association" does not pay for bringing suits in behalf of members nor for defending personal injury suits. A magazine, which is published by the respondent and sent to each subscriber, contains a list of attorneys at law in principal towns. This is stated on the list itself to be for the convenience of "members." It is also stated in a summary of "Benefits" published in the magazine with the list that all the service is given by attorneys selected by "members"; that "members" are not obliged to call upon listed attorneys, but may call upon any attorney of their own choice and in all cases should employ an attorney nearest the court in which they must appear. If unlisted attorneys are employed, the bill is to be sent to the "association," and the amounts which the "association" will pay in such instances are limited to $10 for advice, $25 for defence for traffic violations, $35 for defence in reckless driving cases, $50 for defence of property damage suits and $200 for defence of manslaughter charges. Where listed attorneys are employed it does not appear that any limits are fixed. It is also stated in connection with the list that "The A. L. A. does not hold itself out as qualified to practice law," and that "its members should communicate directly with attorneys in order that the confidential rela-

tionship of attorney and client shall exist from the start."
There have been occasions when the "association" has
arranged for counsel to represent the subscriber, but these
seem to have been exceptional. "The 'association' has not
interfered with, or sought to direct or control the action
of listed attorneys in rendering legal services to subscrib-
ers who have applied to them. The only participation of
the association in such matters has been to pay the bills
rendered to the association by the attorneys for services
rendered to subscribers." Attorneys pay nothing for the
listing of their names in the magazine nor on account of
the business which comes to them as the result of such
listing. Neither the respondent nor his firm is named in
the list of attorneys. Two attorneys are listed for Boston.
One is a partner of the respondent. The other is the son
of a partner who has desk room in his father's office. They
are paid by the "association" for each item of services
rendered to subscribers in the same manner as are other
listed attorneys. They retain this money for themselves
and do not turn it over or account for it to the respondent's
firm or to any of its members. The principal office of the
"association" adjoins the offices of the law firm, but with
no door between. On a few occasions subscribers, as a
result of their connection with the "association's" legal
service, have become clients of the law firm in other mat-
ters. This constitutes "a very small percentage of the legal
business of the firm."

In our opinion the business conducted by the respondent
under the name of the "association" is not the practice of
law. The respondent himself performs none of the legal
work for which the "association" pays. He does not employ
the lawyers who do the work. He does not direct or control
them. They are not his agents. He does not "split fees"
with them. So far as appears he does not fix their charges.
The subscribers who apply to them are their clients and
not the respondent's clients. The respondent does not
interfere with the confidential relations between these
attorneys and their clients. He does not interpose himself
between them. All the respondent does is to furnish a list

of competent attorneys, which subscribers may use if they
desire, and to pay such attorneys as subscribers employ.
Any layman could lawfully do these things.

In many respects the business of the association is simi-
lar to that which was under examination in *Matter of
Maclub of America, Inc., ante,* 45. But the cases are dif-
ferent in the fundamental respect that in the *Maclub* case
the respondent bound itself by contract to furnish legal
defence to its members. It sold legal services. Under its
contract with its members it had control over the attorneys
who did the work. Members were its agents in employing
attorneys. It was the principal in the transaction. It inter-
vened between the attorney and the client. These were the
grounds of the decision of this court in that case. None of
them is present in this case. Here the client engages his
attorney on his own account. The attorney is free to act
for the client, to whom he remains directly and solely re-
sponsible, with no right to interfere on the part of the re-
spondent. In that case this court said (at page 49), "The
contract of the respondent is to furnish its members 'legal
defence' in the classes of cases specified, not to pay for
'legal defence' undertaken by the member." In this case
the contract of the respondent is to pay for legal defence
undertaken by the "member," not to furnish its "mem-
bers" legal defence. This case is also distinguishable for
similar reasons from *Matter of Shoe Manufacturers Protective
Association, Inc., ante,* 369. We have seen no case in which
an enterprise conducted as is the "A. L. A." has been held
to be the practice of law. All of the cases cited in behalf of
the petitioner either belong to the class represented by the
*Maclub* case and by the *Shoe Manufacturers Protective
Association, Inc.,* case or are otherwise distinguishable.
Many of the more important decisions are cited in the two
cases last mentioned. We do not repeat them here.

As the respondent's business conducted under the name
of the "association" is not the practice of law, it follows
that the solicitation of subscribers and the presentation to
the public of the advantages of the "association" are not
in themselves improper.

The relation of two of the listed attorneys to the respondent's law firm is the only remaining phase of the case fairly open to question. This presents a situation of some delicacy which could easily become the subject of abuse. Confining ourselves strictly to the facts found, however, we incline to the opinion that no present impropriety is shown. It does not appear that the respondent's law firm derives any direct advantage in its practice from the "association" business of the respondent or that the "association" is conducted with that end in view. The association business is a genuine business. There is nothing to indicate that the precautions taken to separate the "association" from the law firm are not real or that they cover any subterfuge. Any indirect profit or advantage which the firm receives from the publicity given to the "association" is very small and incidental and apparently no greater than that which any firm of lawyers might receive through the connection of its members with substantial business enterprises such as banks or insurance companies or through its members doing business as trustees, receivers or in like capacities. It has never been thought improper for a lawyer to extend his acquaintance or to enhance his prestige in these ways, even though it has a tendency to bring him to the attention of possible clients and thus to increase his law practice.

*Petition dismissed.*