Blair et al. v. Motor Carriers Service Bureau, Inc., et al.

414

*Conlen, LaBrum & Beechwood,* for plaintiffs.

*J. Edward Sheridan,* for defendants.

LEVINTHAL, J., March 2, 1939.—

*Pleadings and issues*

In their bill of complaint, plaintiffs, alleging that they constitute the Committee of the Philadelphia Bar Association on the Unauthorized Practice of Law, complain that defendants, none of whom is an attorney at law, are improperly engaged, and unlawfully hold themselves out as qualified to engage, in certain activities alleged to constitute the practice of law. It is averred that defendants, through extensive advertising soliciting the patronage of the general public, represent themselves as utility and interstate commerce consultants and as tax experts, and conduct a corporation service.

In their answer, defendants admit that they have distributed various letters and pamphlets attached to the bill as exhibits, but deny that the services and activities referred to in their advertising matter constitute the practice of law. They further aver that their appearance before the Public Utility Commission has been "through" a duly-admitted member of the bar, who has also consulted with and advised carriers concerning their rights.

The parties have entered into a stipulation as to certain admitted facts, and testimony was also offered on behalf of plaintiffs and defendants.

I must determine whether defendants have engaged, or held themselves out as qualified to engage, in the activities alleged by plaintiffs, and, if so, whether these activities, or any of them, constitute the practice of law which should be restrained by injunction.

*Findings of fact*

1. Plaintiffs, attorneys at law authorized to practice in the courts of record of Philadelphia County and of the Commonwealth of Pennsylvania, are also members of the Philadelphia Bar Association and constitute the Committee on Unauthorized Practice of Law of the said association. They appear in this action on behalf of the association and for themselves.

2. Defendant Motor Carriers Service Bureau, Inc., is a Pennsylvania corporation. Defendant Tax Service Company is a Delaware corporation authorized to do business in this Commonwealth. Motor Carriers Association is a registered fictitious trade name under which defendant James H. McGurk does business. The said McGurk is also the president and treasurer of both defendant corporations, holding more than a majority of the shares and controlling the activities of each of them. Defendant G. A. Bruestle is the secretary and an employe of defendant Motor Carriers Service Bureau, Inc. Neither the said McGurk nor Bruestle is an attorney at law or authorized to practice law.

3. Defendant Motor Carriers Service Bureau has held itself out, by considerable advertising in the form of signs upon the exterior of its office building and of pamphlets, circulars, and other printed matter, as qualified and ready to give advice concerning, and to perform, the following services: the appearance and representation before State utilities commissions and the Interstate Commerce Commission on behalf of motor carriers; the application for and the obtaining of certificates of public convenience for common carrier operations and of permits for contract carrier operations; the transfer or change of certificates or permits of motor carriers; the merging or consolidation of motor carriers; the purchase of leases or operating contracts of carriers; the increase or decrease of capital stock of carriers; the change of name, address, or equipment of motor carriers; the dissolution or sale of the business of motor carriers; the issuance of securities; the

formation of partnerships and corporations; the registration of trade names; the purchase, sale, or transfer of certificates, permits, or licenses of motor carriers; the recovery of suspended or revoked permits or certificates; the filing of tariffs for motor carriers; the sale of bills of lading; the placing of necessary insurance for carriers; the installation of accounting systems, and the preparation of record forms.

4. Defendant Motor Carriers Service Bureau, Inc., has engaged Edwin J. Feeny, Esq., a member of the Bar of Philadelphia County, to appear before the Public Utility Commission of Pennsylvania, ostensibly on behalf of motor carriers, the customers of said defendant corporation.

5. The appearance before the Utility Commission requires legal training, knowledge, and skill.

6. Defendant Motor Carriers Service Bureau, Inc., represented by defendant G. A. Bruestle, advises motor carriers concerning their rights and duties under the rules and regulations of the Interstate Commerce Commission, and has engaged the said Bruestle to appear before the said commission, ostensibly on behalf of motor carriers, the customers of said defendant corporation.

7. Defendant G. A. Bruestle is authorized by the Interstate Commerce Commission to practice before it.

8. Defendant Motor Carriers Service Bureau, Inc., by its officers, agents, and employes, prepares, for filing with the Pennsylvania Public Utility Commission and the Interstate Commerce Commission, applications for certificates of public convenience for common carrier operations and permits for contract carrier operations, protests against such applications, applications for the transfer of certificates and for the recovery of suspended or revoked certificates, and similar pleadings.

9. The said preparation of pleadings and the filing thereof with the Public Utility Commission and the Interstate Commerce Commission require legal training, knowledge, and skill.

10. Defendant Motor Service Bureau, Inc., by its officers, agents, and employes, prepares and files tariffs for motor carriers.

11. The preparation and filing of tariffs do not require legal training, knowledge, and skill.

12. Defendant Tax Service Company prepares on behalf of motor carriers and others various tax reports and returns required to be filed with the State and Federal governmental authorities, installs accounting systems, and prepares record forms.

13. The preparation and filing of tax returns, the installation of accounting systems, and the preparation of record forms do not require legal training, knowledge, and skill.

14. Defendant Tax Service Company advises motor carriers and others concerning tax liability in different factual situations, giving information as to when it is desirable to dissolve corporations or to increase or decrease capital stock, and generally interpreting and construing the provisions of statutes relating to taxation and cognate subjects.

15. Defendant James H. McGurk advises persons who consult Motor Carriers Service Bureau, Inc., and Tax Service Company with respect to taxes of the Commonwealth of Pennsylvania, their liability thereunder, and the interpretation of tax statutes.

16. Furnishing advice concerning tax laws and methods of business organization and operation likely to reduce the amount of tax liability requires legal training, knowledge, and skill.

17. Defendants Tax Service Company and Motor Carriers Service Bureau, Inc., have held themselves out as qualified to obtain corporate charters for customers, to prepare bylaws and conduct first meetings of incorporators and directors, to merge, consolidate, and dissolve corporations, to increase or decrease stock, and to issue corporate securities.

18. The incorporation or dissolution of companies, their merger or consolidation, the increase or decrease of capital stock, and the issuance of securities require legal training, knowledge, and skill.

19. Defendant corporations act as and secure the appointment of resident agents for foreign motor carriers.

20. Acting as and securing the appointment of resident agents for foreign motor carriers do not require legal training, knowledge, or skill.

21. Defendant Tax Service Company has held itself out as qualified to draft partnership agreements for customers.

22. The preparation of partnership agreements requires legal training, knowledge, and skill.

23. Defendant Tax Service Company registers customers under the fictitious trade-name statute of Pennsylvania.

24. The registration of fictitious trade names does not require legal training, knowledge, or skill.

25. The defendant corporations hold themselves out as qualified to advise their customers concerning insurance, road, vehicle, and labor laws and regulations, applying such laws and regulations to the particular situations of individual customers, and to draft contracts of sale, lease, assignment, etc., for their customers.

26. Such application of the law to concrete cases, the furnishing of such legal advice, and the drafting of such contracts require legal training, knowledge, and skill.

## Discussion

Plaintiffs, members of the Philadelphia Bar Association's Committee on the Unauthorized Practice of Law, are seeking to have me enjoin defendants from practicing law.

Both defendant corporations, Tax Service Company and Motor Carriers Service Bureau, Inc., occupy the same office building, are managed and controlled by defendant McGurk, and are actually two departments of one in-

tegrated and complete service for motor carriers. The other defendant, Bruestle, is employed by Motor Carriers Service Bureau, Inc., to handle interstate commerce matters for its customers. Bruestle, though not a lawyer, has been duly authorized by the Interstate Commerce Commission to appear and practice before it.

The two defendant corporations have for some time held themselves out to the public as qualified to render, and have actually rendered or attempted to render, a great variety of services. The activities of the two companies frequently overlap. Tax Service Company, as its name indicates, is now primarily engaged in furnishing its customers with a tax service, in preparing and filing State and Federal tax reports and returns, and in advising how to effect reductions in tax liability. Motor Carriers Service Bureau, Inc., solicits and receives the patronage of motor carriers for whom it serves as "consultant" in public utility and interstate commerce matters.

The prevalence of unauthorized law practice is giving the legal profession serious and increasing concern, and plaintiffs and their counsel are to be commended for their professional zeal in instituting this suit and for the thoroughness and ability with which they have prosecuted it. In a recent study prepared by a special committee of the American Bar Association, the prevention of lay competition is recommended as one of the measures necessary to improve the deplorable economic condition of the bar, particularly of the younger members of the profession and especially in our larger cities: The Economics of the Legal Profession, (1938) 87-88. This committee's report further points out that the problem of the unauthorized practice of law requires far more than merely legislating it out of existence or driving it to cover by instituting judicial proceedings. It is essentially a problem of self-appraisal which the legal profession must face, and a practical program of improving legal services and of reducing legal fees must be coupled with any campaign

against the layman who engages in the practice of law: Ibid. pp. 99-153.

Mr. Chief Justice Kephart, speaking extra-judicially, but with the authority of his high office, has well said:

"While we are suppressing those who attempt to practice law in an unauthorized manner, let us also see that our own practice meets the commendation not only of our clients but of the public". Kephart, Unauthorized Practice of Law, 40 Dick. L. Rev. 225, 230 (1936).

Suits by members of the bar for injunctions to restrain the practice of law by laymen are an established procedure in our State: Shortz et al. v. Farrell, 327 Pa. 81 (1937) ; Childs et al. v. Smeltzer, 315 Pa. 9 (1934). The exclusive privilege to practice law is the lawyer's because his training is regulated, his intellectual and moral qualifications are investigated, and his responsibility can be readily enforced by the court, whose officer he is. These important safeguards for the protection of the public from unscrupulous and from ignorant lawyers would be futile if laymen might with impunity practice law. It is, therefore, not to protect the economic interests of the members of the bar, but rather to safeguard the rights of the general public that the practice of law is restricted to lawyers only.

As Mr. Justice Stern said, ". . . the object of the legislation forbidding practice to laymen is not to secure to lawyers a monopoly, however deserved, but, by preventing the intrusion of inexpert and unlearned persons in the practice of law, to assure to the public adequate protection in the pursuit of justice, than which society knows no loftier aim": Shortz et al. v. Farrell, supra, p. 91.

The Act of April 28, 1899, P. L. 117, as amended by the Acts of April 17, 1913, P. L. 80, April 24, 1933, P. L. 66, and July 12, 1935, P. L. 708, 17 PS §§1608-1610, prohibiting the unauthorized practice of law in our State, gives no definition of "the practice of law". This is desirable, for as Mr. Justice Stern properly said in the Shortz case, supra, p. 84: "An attempt to formulate a precise defini-

tion would be more likely to invite criticism than to achieve clarity." Nor would we be greatly aided thereby, for, to borrow a phrase from Mr. Justice Holmes, "general propositions do not decide concrete cases".

The legal profession obviously has complexities and diversities too many and too intricate to be compressed within an exact formula. Thus, the line which divides the domain of the lawyer from that of the accountant, or from that of the real estate broker and conveyancer, is often shadowy and wavering. Equally obscure is the boundary that defines the limits of the functions of the legal counsellor as distinguished from those of the business and financial adviser. It is well known that there has been an unimpeded invasion by large and powerful lay agencies into the lawyer's province, despite legislative enactments and court decisions intended to prevent such encroachment. On the other hand, lawyers, commercializing their professional skill and knowledge, have not infrequently become active in industry and finance.

"Business men occasionally have been heard to remark that the American lawyer, as loan agent, insurance agent, real estate agent, and business manager, has been guilty of encroaching upon the domain of business, contrary to the common conception of professional propriety in England and continental Europe": Gambrell, Lay Encroachments on the Legal Profession, 29 Mich. L. Rev. 989, 990 (1931). See also 2 Bryce, The Bar, in the American Commonwealth (1889) p. 508.

It is obvious that no wall can be built around the field of the law that will keep all lawyers within it and all laymen outside it. This calls to mind the remarks of Baron Bramwell in the case of Child v. Hearn, 9 L. R. Ex. 176, 181 (1874). There, a railway's fence was defective and defendant's pigs strayed and did mischief to a trolley car. The decision was that the barrier should have been sufficient to prevent the incursions, not of all pigs, but of pigs of "average vigour and obstinacy". "Nor do we lay down", said the learned Baron, "that there must be a

fence so close and strong that no pig could push through it, or so high that no horse or bullock could leap it. One could scarcely tell the limits of such a requirement, for the strength of swine is such that they would break through almost any fence, if there were a sufficient inducement on the other side. But the company are bound to put up such a fence that a pig not of a peculiarly wandering disposition, nor under any excessive temptation, will not get through it."

Speaking generally, the lawyer engages in three types of professional activity: (1) He appears before public tribunals and presents evidence and arguments on behalf of clients; (2) he prepares documents for clients; and (3) he advises clients in regard to legal matters. In the Shortz case, supra, the Supreme Court has indicated that the preparation of simple or elementary documents of a routine character and not requiring legal knowledge beyond the average man's does not constitute the practice of law. Other courts also have distinguished between instruments that are "simple" and those that are "complicated". See, e. g., Paul et al. v. Stanley, 168 Wash. 371 (1932), and People v. Title Guarantee & Trust Co., 227 N. Y. 366 (1919). This distinction does not, in my opinion, furnish a very satisfactory test of what constitutes the practice of law, for the determination of whether, in a given situation, a simple or a complex instrument should be drawn may itself require extraordinary legal knowledge and expertness.

Despite the implication of the Shortz case, supra, in Walker v. Kahn, 31 D. & C. 620, 622 (1938), the Common Pleas Court of Allegheny County said:

"To allow persons who are not versed by study of the whole body of the law to practice law or to interpret statutes, in even a minor way, would be as absurd as to permit persons who lack a study of the whole human body to practice medicine and tinker with the human anatomy."

But we all know that dentists, chiropodists, manicurists, barbers, masseurs, without violating any rule of law or

reason, do tinker "in a minor way" with parts of the human body, though they do not pretend to be practitioners of medicine. So, too, under the rule of convenience underlying the Shortz case, laymen, speaking generally, may prepare simple, elementary documents of a routine character and may also advise persons as to matters of business, though minor legal questions be incidentally involved, where the knowledge of law required is not beyond the ken of the average man.

In the absence of any precise formula, it becomes my duty to consider whether any of the various services which defendants hold themselves out as qualified to render, or which they actually render, constitute the unauthorized practice of law, and to determine this question I must ascertain whether these services require legal training, knowledge, and skill beyond the average man's.

### 1. *Appearance before utility commissions*

I am of the opinion that participation in proceedings and hearings before the Pennsylvania Public Utility Commission should be the exclusive prerogative of the duly-admitted lawyer. It is true that the Utility Commission is not a court of record but is an administrative agency of the legislature, with only quasi-judicial functions: Commonwealth ex rel. v. Benn, 284 Pa. 421 (1925) ; Metropolitan Edison Co. v. Public Service Comm. et al., 127 Pa. Superior Ct. 11 (1937) ; and that strict rules of evidence are not to be applied to hearings before the commission: Schuylkill Ry. Co. v. Public Service Comm. et al., 268 Pa. 430 (1920) ; Hoffman et al. v. Public Service Comm., 99 Pa. Superior Ct. 417 (1930). But it is well established that every order of the commission must be in conformity with law, and, among other things, it must appear from the record that the order was supported by sufficient legal, competent evidence: Latrobe Water Co. v. Public Service Comm., 123 Pa. Superior Ct. 21 (1936) ; Cage et al. v. Public Service Comm., 125 Pa. Superior Ct. 330 (1937) ; and that spe-

cific findings of fact are essential to the validity of the commission's orders: Klawansky v. Public Service Comm., 123 Pa. Superior Ct. 375 (1936) ; Erie Lighting Co. et al. v. Pennsylvania Public Utility Comm., 131 Pa. Superior Ct. 190 (1938). I am satisfied that the lawyer's expert knowledge of the rules of evidence is needed to insure the proper administration of justice before the commission. The examination of witnesses and the preparation of a record for appeal can be conducted well only by men trained in the rules of evidence and able to find and construe the statutes and decisions relating to the questions at issue.

Defendants no longer appear before the Public Service Commission, which has been superseded by the present Public Utility Commission. I am, therefore, not called upon to consider the propriety of the rule of the former commission, which did permit practice by laymen. Cf. Shortz et al. v. Farrell, supra, p. 83, n. 2.

The rules of our Public Utility Commission now properly provide that only lawyers may appear and practice before it. Defendant corporations engaged Edward J. Feeny, Esq., a duly licensed and admitted lawyer, to appear for those of their customers who require representation before the commission. This lawyer was also vice president of Motor Carriers Service Bureau, Inc., has an office at the place of business of defendant corporations, and shares with defendants, in lieu of "office rent", the fees he receives from their customers whom they solicit and refer to him. I am satisfied that he was employed by Motor Carriers Service Bureau, Inc., was responsible to it, and appeared before the Public Utility Commission, actually representing his employer corporation rather than the motor carriers for whom he ostensibly entered his appearances. The carriers were clients not of Feeny but of defendants, and came in response to their advertisements and solicitation. They looked to the corporation,

not to Feeny, for responsibility. Mr. Feeny has not been named as a party defendant in these proceedings. I am of the opinion, however, that it is grossly improper for him to permit defendants to evade the rules of the Public Utility Commission by allowing himself to be used as their agent to do for them what they cannot themselves do. Law practice is entrusted solely to lawyers, not only because of their superior training, but also because of the confidence with which the uninitiated layman may place his affairs in their hands, assured of the utmost good faith. No intermediary with a lesser duty can be suffered to intervene and to divide the lawyer's allegiance to his client: Canons of the American Bar Association, no. 35. See In re Co-operative Law Co., 198 N. Y. 479 (1910), In re Otterness, 181 Minn. 254 (1930), People ex rel. v. The Peoples Stock Yards State Bank, 344 Ill. 462 (1931), and In re Opinion of the Justices, 289 Mass. 607 (1935). Compare In re Maclub of America, Inc., 295 Mass. 45, 3 N. E. (2d) 272, and In re Shoe Manufacturers Protective Assn., Inc., 295 Mass. 369, 3 N. E. (2d) 746, with In re Thibodeau, 295 Mass. 374, 3 N. E. (2d) 749. See the cases collected in 73 A. L. R. 1327, 1331 (1931), in 105 A. L. R. 1364, 1369 (1936), in Hicks & Katz, Unauthorized Practice of Law, 91 (1934), and in Brand, Unauthorized Practice Decisions, 771, 778 (1937).

In the case of Neill et al. v. Gimbel Brothers, Inc., 330 Pa. 213, 219 (1938), where a licensed optometrist was employed by a business corporation, Mr. Justice Schaffer wrote:

"The rule is generally recognized that a licensed practitioner of a profession may not lawfully practise his profession among the public as the servant of an unlicensed person or a corporation; and that, if he does so, the unlicensed person or corporation employing him is guilty of practising that profession without a license. . . . The rule stated recognizes the necessity of immediate and unbroken relationship between a professional man and those who engage his services."

In this connection it is interesting to note that in a recent volume it is suggested:

"Corporations possess important advantages over the individual lawyer for certain types of legal work because of their continuous life and responsibility, their financial strength, and their ability to employ a specialized staff of legal advisers. Many persons contend that the states should frankly recognize the fact that corporations actually do practice law and should undertake to regulate corporate legal practice": Owens, Business Organization and Combination (1938), p. 125. See also Wormser, Corporations and the Practice of Law (1936), 5 Fordham L. Rev. 207, 217.

However, in the absence of statutory recognition, we are, of course, bound by the principle of law outlined in the Neill case, supra.

The present arrangement between defendants and Feeny must be terminated. Defendant corporations are therefore enjoined from holding themselves out as qualified to appear before the Public Utility Commission and from engaging Feeny or any other lawyer to appear for their customers.

As to the appearance before the Interstate Commerce Commission by defendant Bruestle, secretary and employe of Motor Carriers Service Bureau, Inc., I am of the opinion that his continued practice there should not be enjoined by me. Although ordinarily, as I have said, to insure competency and answerability, practice before an administrative body such as the Interstate Commerce Commission should be confined to attorneys at law, that rule need not be applied in the case of a tribunal which regulates its own bar and by examination endeavors to ascertain the ability and character of those who appear before it. A proper regard for the prerogatives of an important Federal administrative tribunal should prevent the issuance of an injunction restraining one from doing precisely that which such a tribunal has seen fit to authorize him to do. Compare Public Service Traffic Bu-

reau, Inc., v. The Haworth Marble Co., 40 Ohio App. 255 (1931), with People ex rel. v. Goodman, 366 Ill. 346, and Clark et al. v. Austin, 340 Mo. 467 (1937). See the cases collected in 111 A. L. R. 19, 32-35 (1937), Robinson, Appearances by Laymen in a Representative Capacity Before Administrative Bodies, 5 Law & Contemp. Prob. 89 (1938), and Moon, Unlawful Practice Before Industrial Commissions, 35 Mich. L. Rev. 442 (1937). Plaintiffs' remedy is to seek for an amendment by the commission of its rules of admission to its bar.

I, therefore, do not enjoin Bruestle from advertising in this Commonwealth that he is qualified to appear before the Interstate Commerce Commission. Nevertheless, just as defendant corporations cannot practice before the Public Utility Commission by employing a lawyer to appear for their customers, so also they are not permitted to hold themselves out as "interstate commerce consultants", even though one officer may be qualified to do so personally, nor will defendant corporations be permitted to engage Bruestle or any other person to appear for their customers before the Interstate Commerce Commission.

## 2. *Preparation of documents for filing with commissions*

In the case of Shortz et al. v. Farrell, supra, it was held that the preparation and filing of pleadings with the Workmen's Compensation Board or with compensation referees do not constitute the practice of law. The court there said, at page 92:

"Such 'pleadings', however, are so uniformly simple that it cannot fairly be said that legal skill is required in their preparation. They are executed on forms prepared by the Board, are elementary in character, and do not rise to the dignity of pleadings as that term is understood in other judicial proceedings."

In the present case, however, plaintiffs offered testimony of two lawyers who qualified as experts in public utility law and practice. These witnesses testified, without contradiction, that the preparation of applications for certificates of public convenience by motor carriers in-

volves the consideration of complicated legal problems and requires familiarity not only with statutory legislation on the subject, but also with judicial decisions interpreting the statutes; and that there are several forms of applications supplied by the commission, but the choice of the form to meet the particular situation of the applicant requires legal knowledge and skill. In view of this testimony, which I deem reliable, I am of the opinion that applications for certificates of convenience, and also protests against such applications, applications for the transfer of certificates and for the recovery of suspended or revoked certificates, and similar documents, do rise to the dignity of "pleadings" in judicial proceedings, that their preparation does require legal skill and knowledge and does constitute the practice of law, and I enjoin defendants from holding themselves out as qualified to render such legal service. This also applies to similar pleadings prepared for filing with the Interstate Commerce Commission. Defendant Bruestle is not enjoined from preparing such documents for his own clients, as he is duly authorized to practice before the Interstate Commerce Commission, but defendant corporations are restrained from employing anyone, including Bruestle, to prepare documents for their customers for filing before the Interstate Commerce Commission.

I do not, however, enjoin defendants from preparing and filing tariffs for motor carriers, for there was no testimony offered on behalf of plaintiffs tending to show that the preparation of tariffs involves any legal skill or knowledge beyond the ken of the average man. It obviously does not, since tariffs, setting forth the rates charged by the carriers for shipping services, are simply factual statements, in no way resembling pleadings in judicial proceedings. If and when the tariffs be protested and an appearance before the commission becomes necessary, then, of course, the services of a lawyer will be required, and defendant corporations will not be permitted to engage a lawyer to appear on behalf of their customers.

## 3. *Preparation of tax returns*

The preparation of tax reports to be filed with State and Federal taxing authorities presents a difficult problem. I am aware that in the cases of In re Graham, 30 D. & C. 531 (Erie Co., 1937), and MacQuarrie v. Union Trust Co. of Pittsburgh, C. P. Allegheny Co., no. 2511, July term, 1938 (unreported), defendants were enjoined from preparing tax returns for others. I am, nevertheless, of the opinion that the preparation of tax returns does not of itself constitute the practice of law. See Merrick v. American Security & Trust Co., Ct. of App. D. C., 1939, reported in 5 Unauth. Prac. News 20 (Feb. 1939), where defendant trust company was permitted to prepare and file income tax returns for its customers.

In filling out such returns, printed forms furnished by the State and Federal revenue bureaus are used. These documents are not definitive in character nor do they vest legal rights. They may be amended without great difficulty and are largely informative. Defendants, as to this branch of their work, are generally little more than skilled amanuenses, doing what an intelligent man could do for himself and what would be given to another to do only by someone who has little acquaintance with business routine and accounting technique. Furthermore, unlike plaintiffs' presentation of expert testimony proving that the preparation of Public Utility Commission applications requires legal training, knowledge, and skill, there was no offer of evidence of any kind to prove that the preparation of tax returns calls for such training, knowledge, or skill.

I do not enjoin the preparation of tax returns, but when in the course of preparing a return a doubtful question arises which requires the construction of a statute or the consideration of a decision, the problem calls for a lawyer's solution, for the reasons stated in greater detail below, where the application of the law to fact situations is shown to constitute the practice of law.

## 4. *Advising clients how to avoid or reduce tax liability*

Defendant corporation Tax Service Company and defendant McGurk have undertaken to advise customers as to what particular course of action should be adopted in order to avoid or reduce tax liability. Thus, they have suggested the advantages or disadvantages of incorporation or of the formation of a partnership, or of the merger or dissolution of corporations, or of the increase or decrease of capital stock, etc.

This type of activity when performed by the lawyer is usually designated as "office practice". It constitutes an essential part of the service of the legal profession. The danger to the public that lurks in the encroachment by laymen upon this type of law practice is serious.

"But where the activities are in an office, the actors closeted, courts do not know nor does the profession of such acts. Here the opportunities for wrongdoing and bad advice grow correspondingly": Kephart, supra, at p. 226.

A distinction must, however, be drawn between legal advice and business counsel. An accountant or a broker is frequently called upon to discuss with clients the advantages, from a business point of view, of forming a partnership, of purchasing or selling a business, of organizing or dissolving a corporation, of merging corporations, or of increasing or decreasing capital stock. Furnishing business counsel of this character does not of itself constitute practice of law, even though incidentally legal questions may be involved. But this is not the nature of defendants' activity. They held themselves out as "tax consultants" and as qualified to advise the public how to avoid or reduce tax liability. This obviously does constitute the practice of law, for it requires thorough familiarity with complicated statutes and with multitudinous court decisions. Compare Wardman v. Leopold et al., 85 F. (2d) 277 (Ct. of App., Dist. of Col. 1936), and Mandelbaum v. Gilbert & Barker Mfg. Co., 160 Misc. 656,

290 N. Y. Supp. 462 (1936), with Elfenbein et al. v.
Luckenbach Terminals, Inc., 111 N. J. L. 67 (1933);
85 U. of Pa. L. Rev. 432; 111 A. L. R. 19, 36.

Thus, though I am of the opinion that defendants may
prepare and file tax returns, just as they may install
bookkeeping and accounting systems or prepare record
forms, they may not advise what particular future course
of action will, as a matter of law, advantage or disad-
vantage the taxpayer. Defendants are therefore enjoined
from advising, or holding themselves out as qualified to
advise, their customers how to avoid or reduce tax lia-
bility.

### 5. *Incorporation service*

Defendants' services in incorporating companies, in
merging and consolidating corporations, in dissolving
them, in increasing or decreasing their capital stock, and
in issuing corporate securities, do require extraordinary
legal knowledge and skill and do constitute the practice
of law. In Walker et al. v. Alles, 85 Pitts. 295 (1937),
and in Laska et al. v. Gibson, 84 Pitts. L. J. no. 5, p. 11
(1935), laymen were enjoined from preparing charter
applications, incorporating corporations, or forming com-
mon-law companies. See also In re Brainard, 55 Ida. 153
(1934). Judged by any valid standard, a corporation
charter is a "complicated" instrument. It is a contract
between the corporation and the State, and a contract
among the persons interested in the corporation. The
preparation of corporate bylaws and resolutions, required
in connection with the organization of a corporation,
necessarily includes the giving of advice concerning mat-
ters of law, and insofar as they create, modify, surrender,
or secure legal rights their drafting clearly constitutes
the practice of law. What I have said above of office prac-
tice applies here as well.

"It is true", as the Appellate Division of the Supreme
Court of New York said in the case of In re Pace, 170
App. Div. 818, 825, 826, 156 N. Y. Supp. 641, 654 (1915),
"that the Legislature has made it so simple and appar-

ently easy to incorporate a company, that it often happens that laymen, guided by stationers' blanks, undertake to perfect incorporation without legal advice, and sometimes without untoward consequences. But this does not prove that the incorporation of a company according to statute does not involve, properly speaking, legal advice, which in practically every case is requisite if there is to be assurance that the work when done has been done legally and properly."

So, also, the minutes, resolutions, and contracts in connection with the merger, consolidation, or dissolution of corporations or with the increase or decrease of capital stock, or with the issuance of corporate securities, all create and define legal rights of an important nature, and require, for their proper drafting, expert skill in legal technique and a considerable degree of information about the law. Public policy demands that this practice be confined to attorneys at law. It is true that the New Jersey statute, prohibiting the unauthorized practice of law, expressly permits corporations to continue incorporation service: N. J. Laws 1928, c. 268, p. 676, Comp. Stat. Supp. (1925-1930), sec. 52-214t. The fact that it was deemed necessary to make this explicit statutory exception would indicate that corporation service does constitute the practice of law, and it is to be noted that our Pennsylvania statute does not contain this exception to the general prohibition of law practice by laymen.

Defendant corporations may, of course, continue to serve as resident agents for foreign corporations, so long as they do not give legal advice or draft legal documents for their principals.

### 6. *Partnership contracts, registration of trade names, and miscellaneous services*

Partnership agreements unquestionably create and define legal rights and liabilities of an important character, and their proper drafting requires considerable legal knowledge and skill. On the other hand, the registration of fictitious trade names does not require expert knowl-

edge of the law. The forms to be filed with the prothonotary and the Secretary of the Commonwealth are relatively simple, and the information to be furnished is purely factual. But the giving of advice concerning the effect of registration upon the rights or liabilities of the registrants, or the advantages of registration as contrasted with incorporation, for instance, does constitute law practice and is forbidden.

The same principle controls defendants' information service with regard to insurance, road, vehicle, and labor laws and regulations as applicable to their motor carrier customers. Such information is of a technical and legal nature, and only a lawyer will be permitted to apply it to the particular facts of the individual case. It is the lawyer's special function, in the final analysis, to apply general principles of law to concrete cases and to predict what the courts will say and do under certain conditions: Holmes, The Path of the Law, 10 Harv. L. Rev. 457 (1897) ; Collected Legal Papers, 167 (1921). That type of service, like the drafting of contracts, assignments, bills of sale, leases, etc., is "office practice" and, as I have already said, public policy demands that it remain the exclusive province of the lawyer. Incorrect advice and faulty draftmanship will usually not be corrected before the advice or the contracts have been acted upon, to the serious detriment of defendants' customers, who may by that time have subjected themselves to considerable pecuniary loss, and possibly to criminal penalties. Defendants are, therefore, enjoined from holding themselves out as qualified to give any advice or to draft any contracts requiring legal training, knowledge, or skill beyond the ordinary.

There is still one other question, in this case of many questions, that should be discussed. Defendants point out that in the certificate of authority of the Tax Service Company to do business in this State the Deputy Secretary of the Commonwealth granted it authority "to organize, represent and act as agent for corporations in

434

Delaware and elsewhere, to secure charters in Delaware and elsewhere, to carry on a general tax service business and anything incidental thereto." Furthermore, the charter of the Motor Carriers Service Bureau, Inc., provides, inter alia, that the corporation may "prepare reports, tariffs . . . and applications for certificates for motor carriers. . . ." It is argued that therefore defendant corporations have the power to engage in these practices. I do not agree. It is unnecessary to determine whether the legislature has the power to authorize laymen to practice law outside of courts. Compare Olmsted's Case, 292 Pa. 96 (1928). It is clear that the legislature has not authorized defendants to practice law, and the charter and certificate of authority to do business in this State are void insofar as they purport to give the corporations such a right. A corporation may be chartered for lawful purposes only: Business Corporation Law of May 5, 1933, P. L. 364, sec. 201, 15 PS §2852-201) ; and the practice of law by laymen and by all corporations for profit is unlawful in Pennsylvania: Act of April 28, 1899, P. L. 117, as amended by the Act of April 24, 1933, P. L. 66, and the Act of July 12, 1935, P. L. 708, 17 PS §§1608-1610.

*Conclusions of law*

1. The appearance before the Public Utility Commission of Pennsylvania or the Interstate Commerce Commission by defendant corporations, acting by their agents or employes, whether or not they be members of the bar or personally authorized to practice before the commissions, constitutes the unauthorized practice of law.

2. Defendant Bruestle is authorized to appear before the Interstate Commerce Commission and to advise his own clients concerning matters within the commission's jurisdiction, although he is not a member of any court of record.

3. The preparation and filing by defendant corporations, acting by their agents or employes, with the Public Utility Commission or with the Interstate Commerce

Commission, of applications for certificates of public convenience for common carrier operations and permits for contract carrier operations, of protests against such applications, of applications for the transfer of certificates, and similar pleadings, do constitute the unauthorized practice of law.

4. The preparation by defendant corporations, acting by their agents or employes, of tariffs for motor carriers does not constitute the practice of law.

5. The preparation by defendants of tax reports and returns and the filing thereof with governmental bureaus, the installation of accounting systems, and the preparation of record forms, do not constitute the practice of law.

6. Furnishing advice concerning tax laws and methods of business organization and operation likely to reduce the amount of tax liability does constitute the unauthorized practice of law.

7. The application by defendants for corporation charters, for the merger, consolidation, or dissolution of corporations, for the increase or decrease of capital stock, and for the issuance of corporate securities, does constitute the unauthorized practice of law.

8. Acting as, or securing the appointment of, resident agents for foreign motor carriers does not constitute the practice of law.

9. The drafting of partnership agreements constitutes the unauthorized practice of law.

10. The registration of fictitious trade names does not constitute the practice of law.

11. Furnishing advice concerning insurance, road, vehicle and labor laws and regulations and drafting contracts of sale, lease, assignment, etc., do constitute the unauthorized practice of law.

12. Defendant corporations unlawfully hold themselves out as qualified to practice law by advertising their ability and readiness to perform the services hereinbefore found to constitute the unauthorized practice of law.

13. An injunction should issue restraining the corporate defendants and James H. McGurk from engaging in those activities set out above which constitute the unauthorized practice of law and from holding themselves out as qualified to perform those services detailed above which constitute the unauthorized practice of law by them.

14. The bill of complaint filed by plaintiffs herein should be dismissed as to the individual defendant G. A. Bruestle.

15. The costs of these proceedings should be paid by the corporate defendants and the individual defendant James H. McGurk.

### Decree nisi

And now, March 2, 1939, the above-captioned case having come on for a hearing and an adjudication on the issues involved therein having been filed by the court on February 23, 1939, it is ordered, adjudged, and decreed as follows:

1. That defendant corporations, Motor Carriers Service Bureau, Inc., and Tax Service Company, their officers, employes, agents, representatives, and servants, and defendant James H. McGurk be and they are hereby restrained and enjoined from doing any of the following acts:

(a) Appearing before the Pennsylvania Public Utility Commission or the Interstate Commerce Commission or members or examiners thereof on behalf of others at hearings on applications, protests, and other proceedings;

(b) Engaging attorneys or other practitioners to appear for the customers of said defendants before the Pennsylvania Public Utility Commission or the Interstate Commerce Commission or any member or examiner thereof;

(c) Preparing applications for certificates of public convenience, for transfer of the same, for recovery of suspended or revoked certificates, protests, and similar documents in any matter for others before the Pennsyl-

vania Public Utility Commission or the Interstate Commerce Commission;

(*d*) Engaging attorneys or other practitioners on behalf of customers to perform the services set forth in clause (*c*) above;

(*e*) Preparing tax returns for others where questions of law arise requiring the application of statutes and decisions to particular factual situations and advising others as to methods of avoiding or reducing their tax liability;

(*f*) Applying for charters of incorporation and for the merger, dissolution or consolidation of corporations, for the increase or decrease of capital stock, the issuance of corporate securities, and from preparing corporate by-laws, resolutions, minutes, or contracts in connection therewith for others, and from advising with respect thereto;

(*g*) Preparing partnership agreements for others and giving advice with regard thereto or with respect to the rights and liabilities of persons registering under the Fictitious Names Act;

(*h*) Giving advice with respect to utility, insurance, road, vehicle, and labor law in their application to particular factual situations.

2. That the said defendants be and they hereby are restrained and enjoined from holding themselves out or advertising in any manner whatsoever that they are authorized or qualified to do any of the acts set forth in paragraph 1 above and from advertising themselves in any manner as public utility consultants, interstate commerce, or tax consultants.

3. That the bill in equity filed herein be dismissed as against G. A. Bruestle.

4. That defendants Motor Carriers Service Bureau, Inc., Tax Service Company, and James H. McGurk, pay the costs of these proceedings.