## Umble's Estate.

Argued November 13, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Chas. E. Workman,* for appellant.

*F. Lyman Windolph,* of *Windolph & Mueller,* with him *Bard & Brown, Martin M. Harnish* and *Charles W. Eaby,* for appellees.

OPINION BY PARKER, J., March 1, 1935:

This case comes to us on an appeal from an order of an orphans' court refusing an issue devisavit vel non and dismissing an appeal from a probate of a will by a register of wills and the issuing of letters testamentary in the estate of Christian J. Umble. The grounds on argument for setting aside the will were that the document was written by an officer of the corporation appointed executor, that such officer was not admitted to practice law in any court in this Commonwealth, and that the corporation held itself out as conducting an office for the practice of law in violation of a statute of the Commonwealth.

The order of court from which this appeal was taken was made on a demurrer to the contestant's pleading. That pleading alleged that the Northern Trust & Savings Company had inserted twelve advertisements (set out at length in the pleading) in newspapers of general circulation in Lancaster County; that the advertisements were seen by the testator; that the alleged will of Christian J. Umble was written by an officer of the Trust Company and witnessed by an officer and employee; and that during the preparation of the alleged will, Christian J. Umble did not have the benefit or advice of counsel learned in the law. For such reasons so assigned the contestant asked to have the will set aside and the letters testamentary that had been issued revoked. The advertisements to which reference was made advised the public of serv-

ices furnished by the Trust Company. Some of these exhibits were clearly not objectionable. Those as to which most serious complaint was made were as follows: "He was a good provider while living — but he neglected to will that his dear ones may have the same privileges after his death. Consult our Trust Department." "Your will becomes binding only at your death, before that time it is subject to change. A wise precaution is to review its provisions and see if it reflects your present wishes." "Permanent financial protection after death may be secured by a trust fund. We will be glad to tell you about trusteeships." These were followed by the name of the Trust Company.

The first section of the Act of April 28, 1899, P. L. 117, as amended by Act of April 17, 1913, P. L. 80 (17 PS 1608, 1609) (later amended by Act of April 24, 1933, P. L. 66), provides as follows: "From and after the passage of this act, it shall not be lawful for any person in any county in the State of Pennsylvania to hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney-at-law, attorney and counsellor-at-law, counsellor, or the equivalent in any language, in such manner as to convey the impression that he is a practitioner of the law of this or any other State, nation, country or land; or in any manner to advertise that he, either alone or together with another person, or persons, has, owns, conducts, or maintains a law office, or law and collection office of any kind, for the practice of the law of this or any other State, nation, country or land; without having first been duly and regularly admitted to practice law in a court of record of any county in this Commonwealth." By the second section of that act, a violation of its provisions is made a misdemeanor punishable by fine and imprisonment.

18

The scope and effect of this act was a matter of consideration by the Supreme Court in the case of Childs v. Smeltzer, 315 Pa. 9, 171 A. 883. The opinion in that case indicates in explicit language (p. 14) that "the substance of the offense is the habitual preparation, for a consideration, of legal documents for others. 'To make it a business to practice as an attorney-at-law not being a lawyer is a crime'." In the same opinion the court referred to the practice of real estate agents of drawing deeds and mortgages and on that subject said (p. 14): "There can be no objection to the preparation of deeds and mortgages or other contracts by such brokers so long as the papers involved pertain to and grow out of their business transactions and are intimately connected therewith. The drafting and execution of legal instruments is a necessary concomitant of many businesses and cannot be considered unlawful. Such practice only falls within the prohibition of the act when the documents are drawn in relation to matters in no manner connected with the immediate business of the person preparing them, and when the person so drafting them is not a member of the bar and holds himself out as especially qualified and competent to do that type of work."

We cannot find any basis for the contention that the advertisements complained of were intended to advise the public that the Trust Company maintained a place for the practice of law. A trust company has the right to advertise its business and, in that connection, the fact that it is qualified to act as a fiduciary. It may consult with prospective clients as to the terms on which it will accept trusts and may even present to any one the advantages which it believes will be secured by employing a corporate fiduciary or a particular corporation qualified to act as such. There are frequently involved in the making of wills ques-

tions of business judgment as to which a banker is competent to give advice and may so advise without violating any statute of this Commonwealth, and a layman certainly does not violate the law if he advises others to make a will. When we examine all of the advertisements complained of, we cannot find any evidence from which it could be inferred that the Trust Company was advertising that it maintained an office for the practice of law. On the contrary, these advertisements were nothing more than a legitimate presentation to the public of the service which it offered as a trust company. This presented a different situation than that in Unger v. Landlords' Management Corp., 114 N. J. Eq. 68, 168 A. 229.

There is not any general allegation in the pleadings that the corporation or any of its officers did actually engage in practicing law. The charge in that respect is that the alleged will now under consideration and in which the Trust Company was interested was drawn by an officer of that institution and that the decedent did not have the benefit or advice of "counsel learned in the law." In other words, the pleader depends alone upon the allegation of one single transaction. The Smeltzer case is authority for the propositions that a real estate agent may prepare deeds and mortgages where the business involved pertains to and grows out of the real estate company's business transactions; that the drafting of legal instruments is a necessary concomitant of many businesses and cannot be considered unlawful; and that such practice falls within the prohibition of the act when the documents are drawn in relation to matters not connected with the business of the person preparing them and when the person preparing them is not a member of the bar but pretends that he is qualified and competent to do that type of work. We are of the opinion that the preparation of one will by a trust company acting

through an officer not authorized to practice law, where the will names the trust company as executor, as is here alleged, is not of itself a violation of the statute. A court is called upon to determine legal questions, and it is not its duty to give advice on matters of business ethics, but we do not wish to be understood as approving the practice of trust companies and laymen drawing wills. In fact, such practice has been condemned not only by bar associations, but by bankers' associations as well, and is approaching upon dangerous ground. If the practice is followed, it is not difficult to conceive of circumstances under which the persons so acting would make themselves liable under the statute. The drafting of a will, in many cases, calls for the service of the best legal talent that is available. We are convinced that there is not any allegation in the pleadings from which it could be concluded that the Trust Company or its officers were practicing law or advertising such service.

Assuming, for the sake of argument only, that the will in question was drawn by one not authorized to practice law and that such person in so doing violated the statute in question, it does not follow that the validity of the will is thereby affected. The statute is directed against the illegal practice of law and the penalty imposed is inflicted on the actor who undertakes such illegal practice. There is not anything in the act itself to indicate an intention to affect the validity of a contract or will drawn by one who is not a member of the bar. If the legislature had intended to make invalid deeds, wills, or contracts prepared by one not admitted to practice, it certainly would have said so in clear and explicit terms. That act was intended to protect the public from "ignorance, inexperience and unscrupulousness" and not to impose hardships or injury upon such public. A broker in real estate is required by law to have a license, but it

certainly could not be contended that if a contract made through the assistance of an unlicensed broker was consummated, the contract as between the buyer and seller would be invalid. With equal reason, a deed or will drawn with the assistance of one not admitted to the bar is not invalid for that reason.

We do not know of any principle of law, nor has our attention been called to any principle, which would warrant us in holding that a will drawn by one not a member of the bar is for that reason invalid. To give such a construction to the act would more than offset the good to be accomplished by this salutary legislation. If the parties concerned, either the corporation or its officers, have violated the law, the remedy provided by the act is the one to which resort should be had.

The order of the court below is affirmed at the cost of the appellant.