**MERRICK et al. v. AMERICAN SECURITY & TRUST CO.**

No. 7165.

United States Court of Appeals for the District of Columbia.

On Rehearing.

Decided Oct. 9, 1939.

Writ of Certiorari Denied Jan. 2, 1940.

See 60 S.Ct. 380, 84 L.Ed. ——.

---

[20] D.C.Code, 1901, Sec. 957, Code, 1929, Tit. 25, Sec. 247.

272

**STEPHENS, Associate Justice, dissenting.**

Richard L. Merrick, Leo A. Rover, and William J. Rowan, all of Washington, D. C., for appellants.

Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and John E. Larson, all of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and VINSON, Associate Justices.

EDGERTON, Associate Justice.

Plaintiffs are the members of a Committee on Suppression of Unauthorized Practice of Law of the Bar Association of the District of Columbia. Defendant is an incorporated trust company. Plaintiffs sought an injunction to restrain defendant from practicing law and from holding itself out as authorized or able to furnish legal services or legal advice. In the Dis-

trict Court Justice Bailey, after a hearing on the merits, found that defendant is not engaged in the practice of law. 22 F.Supp. 177. Plaintiffs appeal from his decree dismissing their bill.

Although no statute here forbids corporations to "practice law," we assume that they may not do so and that a court may restrain them from doing so.[1] "Judges have nearly all been practitioners and they are naturally apt to retain the loyalties and prejudices of their old guild, and to give high value to the claims and qualities of their group. * * * It is, indeed, a difficult matter for the members of one group to resolve with complete fairness the conflict between their own group and other groups."[2] But there are no special tribunals for such conflicts, and courts must resolve them as best they can.

The underlying facts are not disputed. Defendant is authorized to, and does, carry on a fiduciary business as executor, administrator, trustee, guardian, agent, custodian, and manager. It solicits employment in some of these capacities. Its advertisements state that it "understands tax and investment problems" and "will be glad to discuss estate problems with you and your attorney. * * * Our intimate knowledge of tax laws and how to deal with them is constantly attracting new trust business to us. * * * Why not talk with one of our Trust Officers and learn how you may benefit from the operation of a Living Trust?" In a 32-page booklet entitled "Modern Methods of Administration and Conservation of Estates," defendant says: "You are invited to discuss your desires with our officers. They do not draw wills; that is a task for your attorney. But they can offer suggestions, based on long experience in the administration of hundreds of estates and trusts, that will help you to make your estate plan fully effective. * * * Have you planned your will to minimize the taxes your estate will be compelled to pay? * * * Have you left part or all of your estate in trust * * * to secure the maximum savings in death taxes? * * * If your wife is to receive the major portion of your estate for use during her life, your children to receive it after her death, you can arrange for her to have the income from it, even portions of the principal if necessary, through

---

[1] Cases are collected in 73 A.L.R. 1327, 105 A.L.R. 1364. Cf. 44 Harv.L.Rev. 1114.

[2] Cheatham, Cases and other Materials on the Legal Profession, p. 55.

a trust under your will. At her death, the property could be given under the trust to the children, or the trust could be continued for them. By this plan, your estate will avoid possible probate publicity and avoid paying the heavy estate taxes twice. * * * Living trusts group themselves into two general classes, the revocable and irrevocable. * * * You may continue the protection of the trust for successive beneficiaries, subject to the limitations of the law. * * * Our officers will be glad to answer your questions about a living trust, and to give you a more detailed explanation of its advantages." To create a life insurance trust "you should consult with your attorney and our officers. * * *"

Twenty of defendant's officers and employees, including eleven members of its trust department, are members of the bar. Its officers and employees, on inquiries from customers and prospective customers, discuss investment and estate problems, give information about tax statutes and statutes of descent and distribution, and discuss the nature of trusts. No charge is made for these services. Defendant does not advise or attempt to influence or guide a customer as to which of several courses he should pursue. When a customer appears to be confronted with a legal problem, defendant insists that he consult his own attorney.

Defendant draws no wills, either by its attorney-officers (a term used herein to mean officers or employees who are members of the bar) or by outside counsel (lawyers who maintain separate offices). It draws no trust agreements except that (a) simple, stereotyped, revocable and non-testamentary agreements to which defendant is a party are sometimes prepared by attorney-officers, and (b) defendant sometimes has its counsel prepare trust agreements to which it is a party, without making a charge then or later against the customer or the trust estate. Defendant's attorney-officers prepare, usually on stereotyped forms, custodian and management agreements to which defendant is a party. Defendant sometimes prepares a release of a deed of trust on a printed form, but usually it has deeds, mortgages and deeds of trust prepared by title companies; and it receives no compensation for such services. Defendant prepares income tax returns for about 50 customers, without charge. It prepares, largely by a lay employee, necessary tax returns in cases where it is a fiduciary. No charge is made for preparation of tax returns and the like; except as employees sometimes do overtime work for which they, and not defendant, are paid by customers.

Defendant's employees appear before tax officials on behalf of estates of which it is fiduciary, but in contested tax matters it is always represented by outside counsel. In uncontested probate matters it is represented before the Register of Wills and the Probate Court by its attorney-officers. No charge is made for their services, apart from the regular commission of an executor or administrator. No part of their salaries is charged to any particular estate. In contested probate matters defendant is represented by outside counsel, who are paid out of the funds of the estate involved. "Neither defendant, nor any of its officers or employees, ever receive or share in any attorney's fee paid by any estate, of which defendant is fiduciary."

Appellants contend, and cite authorities to show, that the practice of law is not limited to the conduct of cases in court but includes the giving of legal advice and the preparation of wills, contracts, and other legal instruments. We have no doubt that one who does those things, and holds himself out to the public as doing them, as a business or profession, practices law. The New York Court of Appeals has held that "Counsel and advice, the drawing of agreements, the organization of corporations and preparing papers connected therewith, the drafting of legal documents of all kinds, including wills" amounts to law practice. "'To practice as an attorney at law' means to do the work, as a business, which is commonly and usually done by lawyers here in this country." People v. Alfani, 227 N.Y. 334, 338, 339, 125 N.E. 671, 673. There the defendant "had an office in which he carried on a real estate and insurance business. Distinct from such work he also drew legal papers, contracts for real estate, deeds, mortgages, bills of sale, and wills. A large sign placed over his * * * window bore the words in big letters 'Notary Public—Redaction of All Legal Papers.'" (227 N.Y. at page 336, 125 N.E. at page 672.) His conviction of practicing law without a license, in violation of statute, was affirmed. That case should be compared with People v. Title Guarantee & Trust Co., 227 N.Y. 366, 125 N.E. 666, which the same court decided on the same day. There the defendant was charged with violating a statute which

forbade corporations to practice law or hold themselves out as doing so. The corporation circulated a booklet which it called "Fees for the Examination of Titles." This booklet listed also "fees for drawing and recording papers," "fees for surveys," and "Average Charges for Drawing Papers." (227 N.Y. at page 369, 125 N.E. at page 667.) The court interpreted the booklet as referring only to papers which the defendant might be called upon to draw incidentally to its authorized business, and not as indicating that it solicited or engaged in the drawing of legal papers unconnected with that business. The court distinguished the Alfani case and reversed the defendant's conviction. In the opinion of Chief Judge Hiscock and the concurring opinions of Judge Pound and Judge Crane a distinction was drawn between drafting legal papers as a business and drafting legal papers pertinent to other business which the corporation was authorized to carry on. Of drafting as a business Judge Pound said: "If such services * * * are customarily rendered, I think that they should be characterized as legal services. This does not imply that a real estate broker may not prepare leases, mortgages and deeds, or that an installment house may not prepare conditional bills of sale, in connection with the business and as a part thereof. The preparation of the legal papers may be ancillary to the daily business of the actor or it may be the business itself. The emphasis may be upon the services of the broker or the business of the trader or it may be upon the practice of law. In the case before us, I think that the defendant may not make it a business to prepare even simple legal papers for all who apply, independently of its chartered powers. * * *. On the evidence, it does not hold itself out as preparing legal instruments generally but only in connection with its legitimate business."[3]

The cases, for the most part, support this distinction between the primary and the incidental; and it is not confined to the drafting of papers. It has been held that an unlicensed individual may not engage, for hire, in the business of giving advice and conducting negotiations for the settlement of personal injury claims[4] or workmen's compensation claims.[5] It has been held that a corporation may not engage in the business of contracting to furnish, by an attorney, legal advice and consultation on "all business, personal and private matters,"[6] or the business of "managing and conducting any legal actions," or advertise that it will "issue distraints * *

---

[3] 227 N.Y. at pages 379, 380, 125 N.E. at page 670.

Section 280 of the N. Y. Penal Law, Consol.Laws, c. 40, which prohibited corporations from practicing law, contained a proviso that it should "not apply to any corporation or voluntary association lawfully engaged in a business authorized by the provisions of any existing statute, nor to a corporation or voluntary association lawfully engaged in the examination and insuring of titles to real property." This section had been amended as follows: "But no corporation shall be permitted to render any services which cannot lawfully be rendered by a person not admitted to practice law in this state nor to solicit directly or indirectly professional employment for a lawyer." The proviso in favor of title companies antedated the amendment. Appellants suggest that the decision in the Title Guarantee case was due to the proviso. But no opinion in the case contains any such suggestion. No judge took the position that legal drafting incidental to the corporation's authorized business (1) amounted to the practice of law but (2) was taken out of the general statutory prohibition by the proviso. On the contrary, each of the three concurring opinions took, implicitly or explicitly, the position that this incidental drafting was not within the general prohibition at all, for the reason that it did not amount to the practice of law; and on this point the three dissenting judges apparently agreed with the majority. The dissent was apparently due to the fact that on one or two occasions the corporation had drawn, for a fee, legal instruments not connected with the transaction of its authorized business. The majority thought these sporadic acts did not amount to practice. Judge Cardozo and two of his colleagues, while expressly "accepting * * * the conception of legal services embodied in Judge Pound's opinion" (227 N.Y. at page 381, 125 N.E. at page 671), dissented from the judgment of reversal on the ground that there was evidence which supported the conviction.

[4] Fitchette v. Taylor, 191 Minn. 582, 254 N.W. 910, 94 A.L.R. 356.

[5] People ex rel. Chicago Bar Association v. Goodman, 366 Ill. 346, 8 N.E.2d 941, 111 A.L.R. 1, certiorari denied 302 U.S. 728, 58 S.Ct. 49, 82 L.Ed. 562.

[6] People ex rel. Los Angeles Bar Association v. California Protective Corporation, 76 Cal.App. 354, 244 P. 1089, 1090.

and bring dispossess proceedings up to the point of starting suit."[7] It has been held that a bank may not, through licensed lawyers whom it employs, transact for its customers and others "almost every form of legal business except the handling of divorce cases;"[8] that a trust company may not engage, for hire, in the business of drawing wills and trust agreements;[9] that a corporation or an association practices law if it carries on the business of furnishing legal services and legal advice to members or customers, for a fee;[10] and that a corporation may not make a business of collecting claims owned by others, determining whether and when to sue, selecting and paying the attorney, and handling the suit in accordance with is own discretion.[11] On the other hand, it has been held that "There can be no objection to the preparation of deeds and mortgages or other contracts" by real estate brokers "so long as the papers involved pertain to and grow out of their business transactions and are intimately connected therewith. The drafting and execution of legal instruments is a necessary concomitant of many businesses, and cannot be considered unlawful. Such practice only falls within the prohibition of the act when the documents are drawn in relation to matters in no manner connected with the immediate business of the person preparing them."[12] The Missouri Supreme Court in a recent opinion distinguished casualty insurance companies, which settle claims made by third persons against the insured, from companies which *hold themselves out to the public* as being engaged in the business of settling claims." The court held not only that the insurance companies might properly settle claims against their insured but also that, if they

employed lawyers for litigation and for legal advice, they might properly allow lay adjusters to take part in conferences with or before the Workmen's Compensation Commission looking to amicable settlement, and to select, fill out, and obtain the execution of appropriate forms of release.[13] One not a member of the bar "may draw instruments such as simple deeds, mortgages, promissory notes, and bills of sale when these instruments are incident to transactions in which such person is interested, provided no charge is made therefor;" and the distribution of booklets containing "general explanations of the desirability and usage of wills and trust agreements, and soliciting the selection of the defendant as executor or trustee," and advising the employment of lawyers, is not a representation that the company gives legal advice.[14] A trust company does not practice law when its salaried attorneys draft pleadings, and appear in court, in its behalf as fiduciary. "Trust companies are empowered by law to act as fiduciaries. * * * In performing the legal phases of that business, attorney-employees are acting for their employers."[15] Detroit Bar Ass'n v. Union Guardian Trust Company involved a statute which forbade a corporation to practice law "or to hold itself out * * * as being entitled to practice law, or render or furnish legal services or advice * * *." The court refused to enjoin either the drafting of revocable nontestamentary trust instruments or, provided no charge was made other than the statutory fee, the performance of routine probate-court work incidental to fiduciary duties. The court observed: "It would be strange indeed if a court in which the proceeding was pending so appointed a trust

[7] Unger v. Landlords' Management Corporation, 114 N.J.Eq. 68, 71, 168 A. 229, 230, 231.

[8] People ex rel. Illinois State Bar Ass'n v. Peoples Stock Yards State Bank, 344 Ill. 462, 176 N.E. 901, 903. In re Otterness, 181 Minn. 254, 232 N.W. 318, 73 A.L.R. 1319.

[9] In re Eastern Idaho Loan & Trust Co., 49 Idaho 280, 288 P. 157, 73 A.L.R. 1323.

[10] Rhode Island Bar Association v. Automobile Service Ass'n, 55 R.I. 122, 179 A. 139, 100 A.L.R. 226; People ex rel. Courtney v. Association of Real Estate Tax-Payers of Illinois, 354 Ill. 102, 187 N.E. 823. Cf. In re Thibodeau, Mass., 3 N.E.2d 749, 106 A.L.R. 542.

[11] State ex inf. McKittrick v. C. S. Dudley & Co., 340 Mo. 852, 102 S.W.2d 895, certiorari denied 302 U.S. 693, 58 S.Ct. 12, 82 L.Ed. 535; State ex rel. Freebourn v. Merchants' Credit Service, 104 Mont. 76, 66 P.2d 337; Richmond Ass'n of Credit Men, Inc., v. Bar Association of City of Richmond, 167 Va. 327, 189 S.E. 153.

[12] Childs et al. v. Smeltzer, 315 Pa. 9, 171 A. 883, 885.

[13] Liberty Mutual Insurance Co. et al. v. Jones et al., 130 S.W.2d 945, 960.

[14] Cain v. Merchants Nat. Bank & Trust Co. of Fargo, 66 N.D. 746, 268 N.W. 719, 720, 723.

[15] Judd v. City Trust & Savings Bank, 133 Ohio St. 81, 12 N.E.2d 288, 293.

company and continued it in such appointment, but simultaneously took the position that such appointee was without power to execute the trust."[16]

While we might not agree, if occasion arose, with all of the cases we have cited, we accept the general distinction between the primary and the incidental. The practice of law is restricted to persons whose character and competence have been examined, who have been licensed, and who can be disbarred, in order that the public may be protected against lack of knowledge or skill on the one hand and lack of integrity or fidelity on the other. Practice by corporations or other unlicensed persons, even though they act exclusively through licensed lawyers, is undesirable because the interjection of an employer between lawyer and client tends to dilute the lawyer's loyalty to his client and divert it to his employer. In general, if there is to be an intermediary employer he must himself be a licensed attorney.[17] But "a man may plead his own case in court, or draft his own will or legal papers."[18] He may draft any papers to which he is in a substantial sense a party, and any which closely concern his own affairs. He may discuss the legal aspects of his affairs with other parties to them or with third persons. He may hold himself out as able and willing to do these things. Either a man or a corporation may employ lawyers to do them. If other parties concerned wish to employ lawyers on their part, they may do so.

The distinction in question disposes of the present case. All the services which defendant advertises, or performs in or out of court, are reasonably incidental and most of them are practically necessary to the conduct of its authorized business. They concern defendant no less because they concern its customers. It follows that defendant is not practicing law. It cannot be an executor without probating wills. It cannot be an adequate estate manager without giving advice on the management of estates; and the chief opportunity for such advice is just before the drafting of the estate instrument. Business necessity, which probably requires defendant to present checks (which are legal instruments) to the customers of its banking department, requires it to present some elementary legal information to the customers of its trust department. A bank may state the difference between a drawer's obligation and an endorser's, and a trust company may state the difference between testacy and intestacy.

Real estate brokers furnish prospective customers with transportation. A broker's commissions are intended to leave him a profit after covering all his costs including that one; but he makes no charge as for transportation, and a prospective buyer who buys nothing pays nothing for his ride. Licensed passenger carriers cannot complain of the broker's activities. He is not in the business of carrying passengers, since he carries none but prospective purchasers, his compensation is not fixed in relation to carriage, and frequently he carries without compensation. Carriage is incidental to his business, and not the business itself. His furnishing, and occasionally advertising, transportation bears much the same relation to the taxicab business that the defendant's advertising and furnishing of legal information bears to the practice of law. The defendant gives information to none but actual or prospective customers, and gives it only in connection with actual or prospective employment in its authorized business; its compensation is not fixed in relation to the information; and frequently it gives information for which no compensation is received.[19]  In

---

[16] 282 Mich. 216, 276 N.W. 365, 366, 371, rehearing denied, 282 Mich. 707, 281 N.W. 432.

[17] "The professional services of a lawyer should not be controlled or exploited by any lay agency, personal or corporate, which intervenes between client and lawyer." Canons of Professional Ethics of the American Bar Association, No. 35.

[18] People v. Alfani, 227 N.Y. 334, 125 N.E. 671, 674.

[19] As the idea of a business or profession includes the idea of claiming compensation, many cases, including several of those stated above, recognize that one's custom in regard to compensation tends to show whether one is engaged in the practice of law. Thus it has been held that a charge for the drafting of wills and trust agreements "brings it definitely within the term 'practice of the law.'" In re Eastern Idaho Loan & Trust Co., 49 Idaho 280, 288 P. 157, 159, 73 A.L.R. 1323. It has even been held that claiming compensation for legal services is "an essential element" in the practice of law. State v. Bryan, 98 N.C. 644, 4 S.E. 522. This is an extreme view, and the contrary has been held. State ex rel. Wright, Attorney General, v. Barlow, 131 Neb. 294, 268 N.W. 95.

giving legal information it is not carrying on an unauthorized business, but performing an incident in its authorized fiduciary business.

Some years 'ago defendant occasionally employed attorney-officers, or outside counsel, to draft wills for customers; and in a few cases in which defendant was co-executor with an individual, defendant's trust officer acted as attorney for the individual as well as for defendant. Defendant has long since abandoned these practices and intends not to renew them. It has adopted a rule which forbids its attorney-officers to appear as attorneys for any one other than defendant.

█ There is only one party to a will; but a trust agreement has two or more parties, and one of them is the trustee. Trustees frequently assume larger powers and duties of management than executors. Normally an executor settles an estate within a limited time after he qualifies, but a trustee is frequently occupied with a trust for many years. Frequently the settlor can oversee the performance of his trust, but the testator can never oversee the performance of his will. A trust seldom disposes of the settlor's entire assets, while a will commonly disposes of the testator's entire assets. Normally, for such reasons as these, the form and substance of a will are more peculiarly the business of the customer, and they concern the fiduciary less intimately, than the form and substance of a trust agreement. While it is proper for the executor to make suggestions to the testator regarding the contents of the will, it has sometimes been held that the actual drafting of wills,[20] or of wills and trust agreements,[21] is not properly incidental to the named fiduciary's business and constitutes the practice of law. We know of no case in which the drafting of trust agreements alone, by a concern which, like the present defendant, drafted no wills, has been held to constitute the practice of law by the named trustee. A custodian, manager, or other agent may draft the agreement which defines his agency, and it is not clear why a trustee may not draft the agreement which defines his trusteeship.

Its form and substance may vitally affect his interests. Such drafting by trustees was expressly upheld in Detroit Bar Ass'n v. Union Guardian Trust Co., 282 Mich. 216, 276 N.W. 365. In People v. Peoples Trust Co., supra, in which the court condemned the drafting of wills, it said: "This is not like the case where trust companies, through their own attorneys, although at the expense of the client, examine and advise as to trust deeds before accepting the trust. In such case the attorney represents the trust company only, and owes no duty or obligation to the grantor in the deed."[22] We think the defendant's occasional drafting of trust agreements is properly incidental to its business as trustee, and does not amount to the practice of law. This is the clearer because, as Justice Bailey found, (1) "If a customer requests defendant to draft a trust agreement, ordinarily defendant recommends that the customer employ his own independent attorney for that purpose, at his own expense;" (2) "defendant does not advise or attempt to influence or guide a customer as to which of several courses he should pursue;" (3) "whenever a customer appears to be confronted with a legal problem, defendant insists that he consult and obtain the legal advice of his own attorney;" and (4) defendant makes no additional charge for its drafting services. The case contains no suggestion that the defendant ever takes advantage of its customers or treats them with less than perfect fairness. If a trustee's attorneys, however innocently, draft an agreement which is unfair to the customer, the transaction may be upset. Jothann v. Irving Trust Company, 151 Misc. 107, 270 N.Y.S. 721, affirmed 243 App.Div. 691, 277 N.Y.S. 955. The defendant's practices give ample recognition to the fact that a settlor is wise to obtain independent legal advice.

█ Appellants ask us to draw a distinction, at least in respect to probate work, between the employment of attorney-officers and the employment of outside counsel; indeed, during argument appellants' counsel said in effect that the case narrows down to the fact that in uncon-

[20] People v. Peoples Trust Co., 180 App.Div. 494, 167 N.Y.S. 767, 770.

[21] Judd v. City Trust & Savings Bank, 133 Ohio St. 81, 12 N.E.2d 288; People ex rel. Committee on Grievances of Colorado Bar Ass'n v. Denver Clearing House Banks, 99 Colo. 50, 59 P.2d 468, 470;

State ex inf. Miller v. St. Louis Union Trust Co., 335 Mo. 845, 74 S.W.2d 348. Cf. In re Eastern Idaho Loan & Trust Co., 49 Idaho 280, 288 P. 157, 73 A.L.R. 1323.

[22] 180 App.Div. 494, 498, 167 N.Y.S. 767.

tested probate matters defendant acts through its salaried attorneys instead of independent counsel. No authority is cited for this distinction. The question whether defendant is practicing law cannot turn upon it. Defendant is as free as any corporation to consult its own convenience in selecting and employing attorneys. What it may do through one member of the bar it may do through another, if he is not specially disqualified. The attorney's employment may be sporadic, frequent, or continuous; it may be performed in and from defendant's offices or other offices; and it may be paid for by fee or by salary. Salaried attorneys and outside counsel are subject to like motives and obligations, public and private, and to like public control. Either may be employed to perform legal services which are properly connected with their employer's business. The probating of wills and every other activity, in or out of the courts and the executive departments, which is involved in the discharge of defendant's duty as a fiduciary is necessarily incidental to its business.

Appellants do not emphasize the fact that defendant employs laymen to prepare tax returns and address arguments to tax officials. Such work may properly be done by lawyers or laymen. Appellants' petition for rehearing included requests that the rights of laymen to practice before workmen's compensation commissions and similar agencies be determined, and that the power of the courts to regulate the practice of law be so enunciated as to settle controversies concerning the activities of collection agencies, accountants, tax consultants and experts, and associations which furnish legal counsel to their members, such as automobile associations, trade associations, boards of trade, chambers of commerce, and the like. During the reargument, however, appellants conceded that we cannot undertake to dispose of issues which are not before us, or of the rights of organizations which are not represented.

Affirmed.

STEPHENS, Associate Justice.

I dissent. The question in this case is whether the activities of the appellee constitute the unlawful practice of law by it as a corporation, and whether its advertising unlawfully holds it out as practicing law. I am unable to agree with the criterion chosen by the majority for the determination of what constitutes the practice of law by a corporation; and under the test which I think both sound and supported by substantial authority, I think the case should be returned to the trial court for further evidence and findings.

I.

The practice of law includes not only court work, but also the rendering of legal service—whether the giving of advice or the drafting of instruments—outside of court. This is explained in Opinion of the Justices, 1935, 289 Mass. 607, 613, 194 N. E. 313, 317, where it is said:

"Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments covering an extensive field of business and trust relations and other affairs. Although these transactions may have no direct connection with court proceedings, they are always subject to become involved in litigation. They require in many aspects a high degree of legal skill, a wide experience with men and affairs, and great capacity for adaptation to difficult and complex situations. . . . No valid distinction . . . can be drawn between that part of the work of the lawyer which involves appearance in court and that part which involves advice and drafting of instruments in his office. The work of the office lawyer is the groundwork for future possible contests in courts. It has profound effect on the whole scheme of the administration of justice. It is performed with that possibility in mind, and otherwise would hardly be needed. In this country the practice of law includes both forms of legal service; there is no separation, as in England, into barristers and solicitors. It is of importance to the welfare of the public that these manifold customary functions be performed by persons possessed of adequate learning and skill, of sound moral character, and acting at all times under the heavy trust obligation to clients which rests upon all attorneys. The underlying reasons which prevent corporations, associations and individuals other than members of the bar from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counsellors at law outside of courts. Decisions of the

courts, some of which deal with statutes, are unanimous on these points, so far as we are aware."

To the same effect see: Cain v. Merchants Nat. Bank & Trust Co., 1936, 66 N.D. 746, 268 N.W. 719; People v. People's Trust Co., 1917, 180 App.Div. 494, 167 N.Y.S. 767; In re Duncan, 1909, 83 S.C. 186, 65 S.E. 210, 24 L.R.A.,N.S., 750, 18 Ann.Cas. 657.

## II.

The majority opinion assumes that it is within the inherent power of the Federal courts of the District of Columbia to define and regulate the practice of law. The question is involved in the case and should I think be ruled on and decided in the affirmative. Opinion of the Justices, supra; Judd v. City Trust & Savings Bank, 1937, 133 Ohio St. 81, 12 N.E.2d 288; State ex rel. Wright v. Barlow, 1936, 131 Neb. 294, 268 N.W. 95; Rhode Island Bar Ass'n v. Auto Service Ass'n, 1935, 55 R.I. 122, 179 A. 139, 100 A.L.R. 226; Richmond Ass'n of Credit Men v. Bar Ass'n, 1937, 167 Va. 327, 189 S.E. 153.

## III.

It is settled that a corporation cannot practice law. The law is a highly complex subject, and the practice of law demands on the part of the practitioner a large fund of professional information, expertness of judgment, and a high standard of dependability. The practice of the profession is, therefore, restricted to such individuals as, upon the basis of character and of preparatory study leading to the necessary professional knowledge and skill, are licensed by the courts. The purpose of the restriction to licensed individuals is that of protecting the public from ignorance, inexperience and unscrupulousness. The court in Opinion of the Justices, supra, stated the reasons thus:

"The relation of an attorney to his client is pre-eminently confidential. In addition to adequate learning, it demands on the part of the attorney undivided allegiance, a conspicuous degree of faithfulness and disinterestedness, absolute integrity, and utter renunciation of every personal advantage conflicting in any way directly or indirectly with the interests of his client. Only a human being can conform to these exacting requirements. Artificial creations such as corporations or associations cannot meet these prerequisites." [289 Mass. at page 613, 194 N.E. at page 317]

In People v. People's Trust Co., supra, the court said:

"The relation between attorney and client is confidential in the extreme. The attorney is under all the obligations attached to a fiduciary relation, and above all things he owes undivided loyalty to his client, unhampered by obligations to any other employer. . . . It is obvious that the intervention of a corporation, the general employer of an attorney, between him and his client, is destructive of this necessary and important relation. There can be no longer uninfluenced devotion to the client's interests. There exists along with, and necessarily influencing, the devotion to the client, the duty which the attorney owes to his general employers. Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client. It was to remedy the growing tendency of corporations to enter the field of practicing law, and perform legal services through lawyers in their general employ, and owing loyalty primarily to them and not to the client, that this law was enacted.[1]" [180 App. Div. at page 496, 167 N.Y.S. at page 768]

In Judd v. City Trust & Savings Bank, supra, defendant trust companies were drawing wills and trust agreements and other legal instruments and giving legal advice incident thereto, the defendants being named trustees, executors, administrators, guardians, or agents or other fiduciaries in the instruments. Holding that this constituted the practice of law and was unlawful, the Supreme Court of Ohio, speaking through Zimmerman, J., said:

"The acts stressed in the above definition[2] as constituting the practice of law are *the performance of legal services for others*. A corporation is 'an artificial being, invisible, intangible, and existing only in contemplation of law.' Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629, quoted in State ex rel.

1 The reference is to N.Y.Penal Law, § 280, making it unlawful for a corporation to practice law. I have stated above that in my view it is within the inherent power of the courts to define and regulate the practice of law.

2 The reference is to a definition of the practice of law in Land Title Abstract & Trust Co. v. Dworken, 1934, 129 Ohio St. 23, 193 N.E. 650.

Crabbe, Atty. Gen. v. Thistle Down Jockey Club, Inc., 114 Ohio St. 582, 590, 151 N. E. 709, 711. It can function only through its officers, agents, or representatives. A salaried trust officer or employee of a bank or trust company, regularly employed, whether a member of the bar or not, is as much an integral and essential part of its organization as the president or cashier. Corporations may not practice law. Therefore, when a trust company through its attorney-employee performs services for customers or patrons in drafting wills, trust agreements, or contracts and other instruments requiring the exercise of legal skill, such corporation must be held to be practicing law within the quoted definition from the Dworken Case. And this fact is not altered by the inclusion of the trust company in such instruments as a fiduciary.

\* \* \*

"Furthermore, when an attorney-employee of a trust company prepares legal documents of the character denoted for the patron or customer of the corporation, the latter is deprived of the offices of an independent legal counselor; patently the allegiance of the attorney-employee is to his employer. 'The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation, and not to the directions of the client.' In re Co-operative Law Co., 198 N.Y. 479, 483, 92 N.E. 15, 16, 32 L.R.A., N.S., 55, 139 Am.St.Rep. 839, 19 Ann.Cas. 879.'' [133 Ohio St. at page 86, 87, 12 N.E.2d at page 291]

In State ex inf. Miller v. St. Louis Union Trust Co., 1934, 335 Mo. 845, 867-9, 74 S.W.2d 348, 358, 359, the defendant corporation was drafting insurance trusts and living trusts for customers. In respect of this the Supreme Court of Missouri, in an opinion by Atwood, J., said:

"Of course, a trust instrument signed by both settlor and trustee means that the trustee has agreed to act in accordance with the 'terms of the trust.' It may be that the latter part of above subdivision 4[3] recognizes that the trustee 'has a legal right to discuss with the creator of the trust' the terms by which it agrees to be bound, and that in so doing, and even in drawing the instrument, the trustee may act, not in a representative capacity, but in its own right, just as a party to any other contract would act. Even so, we find nothing, either express or implied, in the statute under which trust companies are created which authorizes them to advise or counsel any other person for a valuable consideration 'as to any secular law,' or to draw or assist in drawing for any other person for a valuable consideration 'any paper, document or instrument affecting or relating to secular rights.' If they do these things, they are amenable to the statutes here invoked, because subdivision 13 of section 5421, R.S.1929 (Mo.St.Ann. § 5421, subd. 13, p. 7629), under which trust companies are created, makes them subject 'to all liabilities and duties imposed upon them by any law of this state.'

"We are unable to reconcile respondent's insistence of single representation with the proof of what it actually does. The evidence shows that one desiring to create an insurance trust or a living trust comes to respondent because, for one reason or another, he believes that it is peculiarly qualified to advise concerning and to execute such trusts. When the prospective patron indicates that he will nominate respondent as trustee, respondent, apparently recognizing the impropriety of acting both for itself and the settlor of the trust in such matters, tells him that he should advise with his lawyer and have him draw the instrument. If he has no regular lawyer, respondent suggests one. If, actuated perhaps by unusual confidence in respondent or by a sense of thrift when he learns that respondent will perform these services 'free,' he does not consult a lawyer, then respondent draws the instrument for

---

3 The reference is to Mo.St.Ann. § 5421 (4), p. 7628, providing that trust companies may be created "To take, accept and hold, by the order, judgment or decree of any court of this state, or of any other state, or of the United States, or by gift, grant, assignment, transfer, devise or bequest of any person or corporation, any real or personal property in trust, and to execute and perform any and all such legal and lawful trusts in regard to the same upon the terms, conditions, limitations and restrictions which may be declared, imposed, established or agreed upon in and by such order, judgment, decree, gift, grant, assignment, transfer, devise or bequest."

him, and gives him all counsel and advice requested in connection therewith, all for the consideration of being nominated trustee, which we have just held is a valuable consideration. The evidence abundantly shows that frequently such counsel and advice relate to secular laws, and the instrument drawn necessarily affects, and relates to, secular rights of the settlor and his beneficiaries.

"In such circumstances, we think it is no answer to say that the trust company does these things solely for itself and not for the settlor of the trust, and that the latter knowingly accepts the services at his own risk. When such services are rendered without the intervention of disinterested counsel, it is fair to assume that, if the settlor of the trust is not himself a lawyer, he knows substantially nothing 'as to any secular law' or as to how the instrument tendered for his signature affects or relates to his 'secular rights' or those of his beneficiaries, except what the employees of the trust company tell him, and he accepts these services as rendered for him and as fully protecting the interests he wants to conserve. Surely respondent does not mean to say that it does these things solely for itself and not for the settlor of the trust, when it has lulled him into a sense of security and acceptance of the service by finally doing the very thing it said should be done by disinterested counsel and which the law says it cannot do. It will not be heard to say that it is doing only the one thing when the whole transaction shows that it is also doing the other.

"Reasons grounded in the public welfare call for strict enforcement of these statutes against corporate fiduciaries. Naturally the settlor of a trust wants the most service that can be had from the trustee at the least expense to his estate. Just as naturally the trustee wants as broad powers with as little liability and as much compensation as may be consistent with getting and holding the trust business. Thus, in the very inception of a trust agreement, there are certain interests of the settlor and the trustee that are conflicting. The same situation arises when one nominated as executor or trustee undertakes to draw a will or advise the will maker as to any secular law in connection therewith. It is well stated in the Yale Law Journal, vol. 41 (1931-1932) pp. 82, 83, as follows:

" 'It is obvious that the salaried employee of the trust company cannot be completely disinterested. At times the best interests of the testator are served by an outright disposition of his estate, but then there are no trustee's fees. Circumstances might make it desirable that there be two trustees, but in that event the company would have to share the fees with another. It is often in the client's interest that the trust be of short duration, but those which endure over a long period of years are most profitable to the fiduciary. The client's interest might demand that the powers of the trustee be rather limited, but the company wants them as broad as possible. It is in the interest of the trust company that a provision be inserted making it liable only for actual misfeasance or gross negligence, while the client's interest might demand that the trustee be held to a high degree of care.

" 'The trust officer is thus placed in an awkward position. His salary is directly or indirectly dependent upon the amount of trust business which he secures. As a conscientious employee he will try to further its interests whenever possible. It is a rather unusual man who under such circumstances solely considers the interest of the testator. And even such conscientious men, trained in the trust company atmosphere and possibly having exaggerated ideas of the advantages of trusts and corporate fiduciaries, might easily convince themselves that the interests of the client and of the company were identical.' "

I am in substantial accord with the views expressed in the quotations above. The individual in need of legal service is entitled to be guided by professional learning and skill, and neither of these can a corporate entity possess except through its lawyer agents. He is equally entitled to have his rights protected by legal service loyal, consistently with the good of the public at large, to his interests alone. Both of these elements of professional protection must be assured those who stake their lives, liberty, property, or happiness upon the services of a legal adviser. And I think that a corporation, acting through lawyer agents, cannot assure both to the corporate customer. It may be capable of commanding able legal talent, but it cannot assure on the part of its lawyers singleness of interest in the customer's cause or in the choice or drafting of instruments to which both the customer and the corporation are parties. The lawyer who represents the corporation must, in advising the

customer or in determining upon and drafting instruments, act not only for the welfare of the customer but also for the benefit and profit of the company, which is governed by directors whose duty—itself a fiduciary duty—toward stockholders is to look to profit. The interests of the two, company and customer, are usually in some particulars substantially conflicting. It has from time immemorial been settled that the individual practitioner of law cannot represent two persons whose interests are in conflict. I think that the trust company lawyer in most of the instances in which he renders legal service to customers, whether in the form of advice as to a course of action in respect of personal or property affairs or by way of the choice and drafting of instruments, does represent two persons whose interests are in some part in conflict. Although he is rendering legal service to the customer, his primary professional allegiance is necessarily to the corporation, which is his real client.

It is settled that "Since it [a corporation] has no right to practice law directly, it cannot do so indirectly by employing a licensed attorney to practice for it, as that would be a mere evasion of the law." Cain v. Merchants Nat. Bank & Trust Co., supra, 66 N.D. at page 751, 268 N.W. at page 722. And see People ex rel. Los Angeles Bar Ass'n v. California Protective Corp., 1926, 76 Cal.App. 354, 244 P. 1089. And I think no distinction can be drawn in this respect between the permanent salaried lawyers of a corporation (referred to in the instant case as attorney-officers) and its occasionally retained counsel, for both represent of necessity primarily the corporation.

A corporation may of course represent itself through its own lawyers, whether permanently salaried or occasionally retained. Commonly thus private corporations file and conduct suits in their own interests and defend actions brought against them. But it is noteworthy that in such situations the corporations are not representing third parties as customers or clients. As a corollary to the proposition that corporations may represent themselves, trust companies, when authorized by statute to act as executors or administrators, may, when duly appointed such, take through their own lawyers the court orders necessary to probate an estate. Detroit Bar Ass'n v. Union Guardian Trust Co., 1937, 282 Mich. 216, 276 N.W. 365; Judd v. City Trust & Savings Bank, 1937, 133 Ohio St. 81, 12 N.E.2d 288. See contra: In re Otterness, 1930, 181 Minn. 254, 232 N.W. 318, 73 A.L.R. 1319. The theory of the two cases representing the majority view on this subject is that once the legislature has authorized trust companies to act as executors or administrators of estates, it must be taken to have authorized them to perform the duties attached to the fiduciary office, including the taking of the necessary orders in the course of probate. It is to be noted, however, in respect of this type of corporate legal activity, that probate orders are made by a judge whose duty it is to protect the interests of creditors and beneficiaries, whether or not it may be said that the trust company executor or administrator represents not only itself but also such persons. It is to be noted further that except in respect of misconduct in the course of probate proceedings or in respect of making accounts, there is not likely to be diversity of interest as between an executor or administrator on the one hand and beneficiaries or creditors of an estate on the other. In re Otterness, supra, the Supreme Court of Minnesota was of the view that only in such matters as affect the rights of the corporate executor or administrator—where its account is in question or misconduct charged—can a bank through its own lawyers carry on probate proceedings. I am of the view, however, that the rule reflected in the two cases first mentioned is well settled and proper.

## IV.

The instant case being novel in this jurisdiction, the most important question before the court is what is the criterion by which shall be determined what constitutes the practice of law. And clearly the choice of a criterion must be made from the standpoint of public protection, not from that of private advantage for either trust companies or lawyers.

There is some authority to the effect that the drafting of simple legal instruments such as bills of sale, deeds and chattel mortgages, does not constitute the practice of law provided it is done incidentally to the business of the corporation. Cain v. Merchants Nat. Bank & Trust Co., 1936, 66 N.D. 746, 754, 268 N.W. 719, 723; People v. Title Guarantee & Trust Co., 1919, 227 N.Y. 366, 125 N.E. 666. Cf. Childs v. Smeltzer, 1934, 315 Pa. 9, 171 A. 883. I state below what part I think the so-called "incidental to the business of the corpora-

tion" aspect of the test should play. But apart from that, the theory of such cases apparently is that the drafting of simple instruments like those mentioned is of so routine a character, requires so little of legal knowledge and skill, and involves so little service of a confidential character, that it lies within a field of activity permitted by custom to both businessmen and lawyers and not one necessarily classed as within the exclusive province of the legal profession. I think, therefore, that these cases do not hold that it does not constitute the practice of law to draft such simple legal instruments if, antecedent to the drafting of them, there has been exercised by the draftsman substantial legal knowledge and skill in determining from facts presented by a customer what instrument should be chosen, if any. What they in effect permit is the sale of legal forms rather than of advice as to the use thereof. And it is important to note that the drafting of legal instruments, whether simple or complex, presupposes in the vast majority of instances the exercise of legal knowledge and skill, not merely in the drafting process, but also in the often far more important determination of whether, in, effectuating the desires and protecting the interests of the client concerned, any instrument is necessary and if so what instrument and what contents. That is to say, there is a field of professional activity in the law, as also for example in medicine, which requires the expert assembling and study, in the light of professional knowledge, of material facts, and the pronouncing upon them, in view of professional principles, of what in law is broadly called an opinion, and in medicine a diagnosis. The surgeon who has decided to operate, or the internist to treat, has first determined that there is disease and what it is and what the remedy. The lawyer who has decided to draft an instrument or to advise a course of action has first determined that there is a legal right or obligation involved and what the technique of conduct or draftsmanship must be to effectuate or enforce the same. The person who sells "home remedies" for simple ailments without a physician's license is invading the practice of medicine if he names the ailment and prescribes the medicine, for this presupposes the exercise of professional knowledge and judgment. He who drafts "simple instruments" for "routine transactions" without admission to the bar will in many instances invade the practice of law, because identifying the proposed transaction and selecting the appropriate instrument require . the exercise of legal knowledge and judgment.

The distinction that I am emphasizing is recognized in In re Eastern Idaho Loan & Trust Co., 1930, 49 Idaho 280, 285, 286, 288 P. 157, 159, 73 A.L.R. 1323, where the court said:

"Such work as the mere clerical filling out of skeleton blanks or drawing instruments of generally recognized and stereotyped form effectuating the conveyance or incumbrance of property, such as a simple deed or mortgage not involving the determination of the legal effect of special facts and conditions, is generally regarded as the legitimate right of any layman. It involves nothing more or less than the clerical operations of the now almost obsolete scrivener. But, where an instrument is to be shaped from a mass of facts and conditions, the legal effect of which must be carefully determined by a mind trained in the existing laws in order to insure a specific result and guard against others, more than the knowledge of the layman is required . `. .."

Some authorities regard the receipt of consideration as a factor in determining whether the practice of law is being carried on. In re Eastern Idaho Loan & Trust Co., supra; Cain v. Merchants Nat. Bank & Trust Co., supra; In re Duncan, supra. And weight is given to this factor in the implications of the majority opinion. One of the arguments of the appellee in support of the proposition that it is not practicing law is that its fees as trustee remain the same whether or not legal service is furnished a customer. Whether consideration is directly allocated to the rendering of legal service is not in my view controlling. There is consideration whether the trustee's fee is raised or not. A corporation cannot give away service any more than it can give away property. And the cost to the corporation of the legal service said to be free is necessarily somewhere charged to cost of getting business or to overhead. The trustee's fee simply spreads over both the legal service and the fiduciary duties so that while the consideration for each of these two classes of service may be said to be less, nevertheless there is consideration for both in both legal and practical effect. Indeed, naming the company trustee in a trust agreement to be drawn by it is alone consideration. See the discus-

sion of this subject in State ex inf. Miller v. St. Louis Union Trust Co., supra. But even if the legal service were actually free, that would not in my view necessarily characterize the service as not the practice of law. I think that while the presence of consideration, either direct or indirect, is strong evidence that legal service is in a professional sense being rendered the customer, the absence of consideration is not necessarily determinative that the attorney is acting solely for the employer corporation.

There is authority to the effect that even complex legal instruments, the drafting of which requires substantial knowledge and skill of professional character, and to which others are parties with interests consequently affected, may be drawn by a corporation through its officers, provided the preparation of such instruments is incidental to the corporate business itself. Umble's Estate, 1935, 117 Pa.Super. 15, 177 A. 340. See Childs v. Smeltzer, 1934, 315 Pa. 9, 15, 171 A. 883, 885. This last case involves laymen rather than corporations, but it adopts the view expressed in a concurring opinion by Pound, J., in People v. Title Guarantee & Trust Co., 1919, 227 N.Y. 366, 380, 125 N.E. 666, 670, a case involving a corporation. Judge Pound put it thus:

"The preparation of the legal papers may be ancillary to the daily business of the actor or it may be the business itself. The emphasis may be upon the services of the broker or the business of the trader, or it may be upon the practice of law."

This criterion permitting the rendering of legal service by a corporation to customers where it is incidental to its own business to do so, is the criterion urged by the appellee and adopted by the majority in the instant case.

I think this criterion unsound and not supported by the weight of authority. It has the merit of a rule of thumb, of simplicity, and convenience of application, but it will not I think operate satisfactorily in protection of the public. As a negative test it may be sufficient. That is to say, if the putative legal service rendered is not incidental to the business of the corporation, then it is probably improper. But as a positive test the criterion selected by the majority is I think lacking. It warrants the drafting of all instruments—wills, trust agreements or what not—of however complex a nature and requiring whatever degree of professional knowledge and skill in either the choice or the drafting; and it permits the giving of legal advice of whatever nature and however expert may be the knowledge required to give it—provided only that the legal service is rendered to the customer incidentally to the business of the corporation.

V.

I think public protection requires the choice of a sterner criterion. I would retain the "incidental to the business of the corporation" test in its negative aspect. That is to say, I think a corporation ought not to be permitted to furnish legal services to others unless in so doing it is acting incidentally to its own business rather than making the furnishing of the legal service its primary business. But I think the test should go beyond this in its positive aspect. It should, in my view, be: Does the legal service rendered (whether advice, or the determination whether to use an instrument and if so what should be the nature and contents thereof) require in a substantial sense the knowledge and judgment of a lawyer; and is it rendered in whole or in part to a customer of the corporation rather than solely to the corporation. If this question can be answered in the negative, then the activity is proper. But if it must be answered in the affirmative, then the activity is improper. It will then be either a case of the pure sale of legal service by a corporation, or a case where the corporation lawyer is representing both the customer and the corporation. I recognize that this test is less simple and convenient than the criterion chosen by the majority. It will require examination of the particular legal services rendered rather than a mere classification of activities according to whether simple or complex instruments are drawn, or a mere determination of the presence or absence of consideration, or the mere ascertainment of whether either a particular act or a class of activities is incidental to the business of the corporation. But I think the test which I have stated is necessary in public protection and I think it accredited by the weight of authority, if not in terms at least in essence. See the following cases holding that the drafting of wills and trust agreements in which the corporation was named as fiduciary is the practice of law and is unlawful: Judd v. City Trust & Savings Bank, supra; People ex rel. Committee on Grievances of Colorado Bar Ass'n v. Denver Banks, 1936, 99 Colo. 50, 59 P.2d 468; State ex inf.

Miller v. St. Louis Union Trust Co., supra; Detroit Bar Ass'n v. Union Guardian Trust Co., supra. And see the following cases involving the drafting of instruments (by both individuals and corporations) where the draftsman was not a party, i. e., where the drafting was the primary business rather than merely incidental to the business. Childs v. Smeltzer, supra; People ex rel. v. People's Stock Yards Bank, 1931, 344 Ill. 462, 176 N.E. 901; In re Eastern Idaho Loan & Trust Co., supra. And see the following cases in respect of the furnishing of legal advice: Opinion of the Justices, 1935, 289 Mass. 607, 615, 194 N.E. 313, 318; Land Title Abstract & Trust Co. v. Dworken, 1934, 129 Ohio St. 23, 193 N.E. 650.

## VI.

In respect of the activities of the appellee as shown by the evidence and found by the trial court in the instant case: I think that, within the "incidental to the business of the corporation" test urged by the appellee and accepted in the majority opinion as the proper criterion, the appellee has conscientiously kept its activities, including advertising, within lawful limits.[4] And I think that its activities in probate court in respect of uncontested matters in estates of which it is executor or administrator are proper under the rule which I recognize and discuss in topic III above. In contested probate matters, the appellee apparently represents no one but itself. Whether or not within the criterion which I have suggested the appellee has, in its service of customers in activities other than probate, gone beyond the law could not, except in respect of certain aspects of the advertising, upon which I comment below, be determined upon the present findings and evidence. It would require a return of the case to the trial court for the taking of additional testimony concerning the detail of a substantial number of particular acts of putative practice of law in order to determine whether in such particular situations substantial professional knowledge and skill were exercised. And it would require detailed findings upon such evidence. The present evidence and the present findings are descriptive largely of classes of activities as incidental to the appellee's business, and are far too general to make possible a ruling under the criterion which I think proper.

It may be helpful, however, in illustration of my point of view in respect of the criterion which I urge, to set the findings out and to comment upon the activities of the appellee so far as they appear from the evidence and findings. I append the findings in the margin,[5] except those in respect of probate matters.

---

[4] It is proper to state further that I am aware that there is no question in this case as to either the integrity or the dependability of judgment of either the appellee or its lawyers whether permanent salaried lawyers or occasionally retained counsel. And the appellee and its counsel have in this test case made known to the court with commendable frankness the classes of service which it renders customers.

[5] So far as pertinent to the comments in the text the findings were as follows:

Trust Agreements

"Defendant does not have its attorney-officers draft trust agreements, except occasionally such attorney-officers prepare simple, revocable trust agreements of a stereotyped form, which do not contain provisions of a testamentary nature. If a customer requests defendant to draft a trust agreement, ordinarily defendant recommends that the customer employ his own independent attorney for that purpose, at his own expense. *If the customer prefers to have defendant's counsel prepare the trust agreement, defendant has its counsel do so and pays the fee of its counsel for that service, and no charge* is made against the customer or later against the trust estate therefor. To all such agreements defendant is or expects to be a party and defendant does not draft, either by its attorney-officers or counsel, any agreements, to which it is not a party." [Italics supplied]

Agency, Custodian and Management Agreements and Other Miscellaneous Instruments

"Defendant has its attorney-officers prepare agency, custodian and management agreements, to which defendant is or expects to be a party, such agreements being usually on stereotyped forms that are simply a matter of typing. Occasionally when a debt is paid, a release of the deed of trust is sometimes prepared on a printed form in defendant's office, but usually defendant's real estate department has all deeds, mortgages, deeds of trust and instruments of that nature prepared by title insurance companies and defendant makes no charge and receives no compensation therefor."

Taxation Matters

"Defendant prepares income tax returns for about fifty customers of the Trust Department, but never makes a

In respect of the drafting of legal instruments: The appellee does not draft wills or codicils but it does prepare trust agreements. I think no material distinction can be drawn so far as the rendering of legal service is concerned between the drafting of wills and the drafting of trust agreements. And it seems probable that in most of the instances embraced within the class of activities described in the italicized portion of the finding concerning the drafting of trust agreements, there must have been exercised by the appellee substantial professional knowledge and skill in determining whether or not a trust agreement was advisable in respect of a particular customer's personal and property situation, what kind of a trust agreement was advisable, and what its contents should be and how phrased.

With respect to agency, custodian, management agreements and other miscellaneous instruments: Conceivably the determination whether an agency, custodian, or management agreement is appropriate to a customer's situation, and the choice of such an agreement or the determination of the contents and phrasing thereof, might

---

charge for and is gradually eliminating that service. Sometimes individual employees working overtime at night, prepare income tax returns for customers and receive compensation therefor, but that is a personal matter between the employees and customers and defendant receives no part of such compensation. In all cases where defendant is fiduciary, Federal income tax, estate tax and District of Columbia tax returns are prepared by defendant's employees as part of defendant's duties as fiduciary. Defendant's employee in charge of making such tax returns is not a member of the bar. *When questioned by customers, defendant's officers and employees give such customers information as to the rates of taxation and the provisions of taxing statutes and regulations, and sometimes make tax computations, for example, showing the difference between gift taxes payable if a trust is created and estate taxes payable at death, but no charge is ever made for that service.* Occasionally, in connection with estates of which defendant is fiduciary, defendant's officers and employees appear before administrative tax officials of the District of Columbia and Federal Government, but when a matter becomes contested before the Board of Tax Appeals, or before administrative officials, defendant employs independent counsel and is not represented by its salaried officers and employees." [Italics supplied]

### Legal Information

"*When customers or prospective customers, in response to advertisements or otherwise, consult defendant's officers and employees, about their estate problems, defendant's officers and employees discuss with them in a preliminary way investment problems, the advantages of making a will and the disadvantages of intestacy, the comparative advantages incident to the creation of revocable and irrevocable trusts, agency, custodian and management agreements and, when questioned by customers, defendant's officers* *and employees give them information about the contents of statutes, such as statutes of descent and distribution and taxing statutes, and tell them where their property will go; that it can be put in trust for an infant, and that such trust can be limited or terminated at a certain time, but defendant does not advise or attempt to influence or guide a customer as to which of several courses he should pursue. If asked, defendant's trust officers would tell a customer what a living trust covers.* Whenever a customer appears to be confronted with a legal problem, defendant insists that he consult and obtain the legal advice of his own attorney. When any question arises as to the legal rights of beneficiaries, or next of kin, apart from what appears on the face of the statutes, defendant does not undertake to advise them but sends them to attorneys of their own choosing." [Italics supplied]

### Advertising

"Defendant advertises in newspapers, booklets and by other means that it is qualified to serve as executor, administrator, trustee and in other fiduciary capacities. In such advertisements, defendant states the advantages which its officers believe will be secured by employing a corporate fiduciary and particularly by employing the defendant, setting forth facts relating to its financial responsibility, continued existence, knowledge of investments and financial problems, its knowledge of various phases of taxation and its experience in handling and managing estates. By such advertisements, the public is invited to consult defendant's trust officer and to discuss their estate problems with such officer and his assistants. Some of the defendant's advertisements state specifically that it does not draw wills; that that is a task for the prospective customer's attorney, and invites prospective customers to have their attorneys discuss their estate problems with defendant's officers."

require substantial professional knowledge and skill. Possibly, however, this class of activity might not fall within the test I suggest.

With respect to taxation: Many aspects of tax work do not require the knowledge and skill of the lawyer as distinguished from that of the businessman or accountant. It seems probable, however, that to advise concerning what constitutes income for purposes of taxation would require substantial professional knowledge of the detail of judicial decisions and skill in applying them to the tax facts of a particular customer's affairs. It seems probable further that the giving of information concerning tax statutes and regulations would require the exercise of professional understanding of judicial decisions construing them. The class of activity described in the material following the italicized portion of the finding concerning taxation matters would seem warranted within the principles governing the decisions permitting trust companies as executors or administrators of estates to take necessary probate orders.

Concerning legal information: The appellee seems to urge a distinction between legal information and legal advice. It is said that the latter suggests a course of action whereas the former does not. I think no sound distinction can be thus made. Legal information is usually sought only for the purpose of determining what to do in the light of it. And it seems likely that to present to a customer the advantages of making a will and the dis-advantages of intestacy, or the comparative advantages of revocable and irrevocable trusts, would require substantial professional knowledge and skill. And it seems unlikely that the language of statutes of descent and distribution could be dependably explained to customers without the knowledge and judgment of a lawyer concerning judicial decisions construing such language. The mere face of such statutes is by no means always sufficiently informative. One of the appellee's trust officers, testifying as a witness for the appellants, admitted that upon the request of a customer the rule against perpetuities would be explained.

With respect to advertising: The appellee's advertising is so broadly phrased as fairly to include most of the activities which are described in the findings of fact. To the extent, therefore, that the advertising covers items which would prove to be unlawful under the criterion I suggest, the advertising itself would be unlawful.

The evidence in the present record sufficiently particularizes the advertising to show that part of it is improper under the test which I suggest. I append in the margin[6] a portion of the record containing excerpts from an advertising booklet distributed extensively by the appellee to the public. While the matter contained within these excerpts does not in so many words state that the appellee will furnish professional services, I think that when read as a whole it necessarily implies that professional knowledge and skill will be exercised by the appellee in advising customers

---

[6] Things to Check in Your Will

Personal Effects:
Does your will state who shall receive them, avoiding possible disagreement?

Specific Bequests:
Will payment of specific bequests to beneficiaries other than your family leave too little for your family?

Taxes:
Have you provided liquid assets to pay estate and inheritance taxes, in order to prevent losses from forced liquidation, and have you planned your will to minimize the taxes your estate will be compelled to pay?

Residuary Estate:
Will it be large enough to yield the income your family will require?

Trusts:
Have you left part or all of your estate in trust to assure safety of principal, freedom from the burdens of investment and property management for your heirs, and to secure the maximum savings in death taxes?

Investments:
Does your will contain instructions as to investment of estate funds?

Real Estate:
Have you provided for management or disposition of your real estate?

Children:
Does your will take into consideration the needs of your children of different ages or conditions of health?

Minors:
Does your will appoint a trustee for the property you may leave to minors?

Life Insurance:
Changes in tax laws may have made your life insurance program obsolete, no matter how carefully it may have been

concerning their estate matters, and this notwithstanding some contrary statements and implications in other portions of the advertising.

planned a short time ago. We invite you to confer with one of our experienced trust officers in this connection.

Business Interests:

Specific arrangements (trust or purchase agreement) separate from your will, should possibly be made for them.

Special Instructions:

Does your will completely instruct your executor concerning special matters?

Executor-Trustee:

Have you named an executor that is capable, diligent, responsible, permanent?

\* \* \*

### An Invitation

We have described some of the modern methods that more and more prudent men and women are now using to transfer and conserve their estates. We have shown how these methods provide satisfaction economy and protection; and we have suggested the wisdom of making them a part of your plan for your estate.

If you do so you and your family will gain some very worthwhile advantages in addition to those discussed in this booklet—especially in the cost of transferring your estate through succeeding generations of your family.

We invite you to discuss these matters with one of our Officers. Such a discussion, arranged for your convenience, will include only such subjects as you care to discuss. It will be held in strict confidence. Its purpose will be to enable us to answer your questions, and to offer you suggestions and assistance.

We believe you will find much of interest and value in the information we can give you. We offer it, without obligation or charge, with confidence that it will enable you to greatly increase the effectiveness of your plans for your estate and family.